**Mary Ellen PLATT, et al., Appellants,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

No. 82–1560.

District of Columbia Court of Appeals.

Argued June 28, 1983.
Decided Sept. 29, 1983.

James J. Fitzgibbons, Wheaton, Md., and Joseph E. Schuler, Washington, D.C. with whom Joseph C. Roesser, Wheaton, Md.,

Wiley A. Branton, Jr., Ray L. Hanna, and Nancy A. Murray, Washington, D.C. were on briefs, for appellants Platt, et al. Wade J. Gallagher, Mark B. Sandground, Washington, D.C. and Donald T. Cheatham, Arlington, Va., adopted the brief of appellants Platt, et al. on behalf of appellants Perry J. Fliakas, et al. John W. Karr, Washington, D.C., and Jeffrey Tuckfelt, Arlington, Va., also entered appearances for appellants.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C., at the time the brief was filed and the case was argued, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees.

Before NEWMAN, Chief Judge, and PRYOR and BELSON, Associate Judges.

PRYOR, Associate Judge:

On October 24, 1977, a fire occurred at the Cinema Follies Club located at 37 L Street, Southeast Washington. The fact that the building contained only one available exit caused some people to be trapped on the second floor of the theatre, and numerous fatal and nonfatal injuries resulted. Appellants filed consolidated wrongful death and survival actions against the District of Columbia and named government employees.[1] On June 24, 1982, the trial court issued an order dismissing the claims against the District of Columbia and other government officials who were defendants in the action. On October 20, 1982, pursuant to Super.Ct.Civ.R. 54(b), the court directed that the order dismissing all claims against appellees be entered as a final judgment. This appeal followed.

Appellants argue that the trial court erred when it dismissed the complaints and cross claims against appellees on the basis that the District of Columbia owed only a general duty to the public and that no special relationship, sufficient to create a specific legal duty, existed between appellees and the patrons of the club. We agree with the trial court's ruling, and accordingly affirm.

Major Edgar Platt III, and others, entered the Cinema Follies Club on the evening of October 24, 1977, for the purpose of viewing a film and live entertainment. The Cinema Follies Club, a two-story building, of cinder block construction, contained one stairway which led from the first floor lobby to the viewing room on the second floor. While Major Platt and the other patrons were watching the film, a fire ignited in the lobby on the first floor. The fire began when a spark from an electric cleaning machine made contact with a highly flammable chemical substance that was being used to clean the lobby rug. The fire spread rapidly. Unable to escape, nine patrons, including Major Platt, died of asphyxiation from carbon monoxide poisoning and smoke inhalation.

Appellants contend that a special relationship existed by virtue of the fact that the District of Columbia permitted the Cinema Follies Club to remain open to the public with full knowledge that certain building and fire code violations existed. Specifically, appellants argue that 12 DCMR § 626.7 [the building code] mandates that there be at least two class "A" stairways [independent means of egress leading to the outside] in the building before a certificate of occupancy can be issued. The Follies Club, which was being operated as a movie theatre, contained only one stairway that provided an exit from the second floor of the theatre.[2] Appellees point out, however, that subsection four (4) of the same section of the Code states that one exit is sufficient when the population per tier does

---

1. Appellants filed complaints against various other persons and corporations for damages arising out of the October 24, 1977 fire. These actions have been stayed pending the outcome of this appeal.

2. The record reveals that just prior to the incident, the Follies Club was reclassified by the District of Columbia Department of Housing and Community Development from a "private club" to a "public theatre."

not exceed 74 persons.[3] Although strongly criticized, James E. Dickson, the then Chief of the Building Regulations Division of the District of Columbia Department of Housing and Community Development, testified that "where the room makes up the entire floor that one exit can go to the outside." With the case in a pre-trial posture in the trial court, an interpretation of the Code with regard to this question was never completely resolved, and is not pivotal, in our view, to our holding.

In *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C.1981) (en banc), we have recently reiterated our position that "a government and its agents are under no general duty to provide public services . . . to any particular individual citizen." Rather, the duty owed is to the public, and absent a special relationship, the District of Columbia cannot be held liable. *Id.* See also *O'Connor v. City of New York*, 58 N.Y.2d 184, 447 N.E.2d 33, 460 N.Y.S.2d 485 (1983).

In order to convert a duty owed to the general public to a special duty, additional elements are necessary. Although this court has not explicitly articulated the prerequisites to finding a special duty, the concurring opinion in *Warren* provides a useful guideline. In contemplation of that suggested standard, we apply the following two-prong test: (1) a direct contact or continuing contact between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim. *See Warren v. District of Columbia, supra*, 444 A.2d at 11.

Appellants admit that no direct contact can be shown to have existed between any of the victims trapped in the building and appellees. They suggest, however, that a continuing contact can be found from the frequent inspections made by various District of Columbia agencies, and the issuance of a certificate of occupancy in the face of "known" building code violations.

In support of their position, appellants rely on a recent New York decision which held that a special relationship existed where "the municipality not only negligently failed properly to inspect the premises but also that it affirmatively issued a false certificate of occupancy, actively misrepresenting that there were no violations of applicable fire and safety laws." *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 258 n. 5, 447 N.E.2d 717, 722 n. 5, 460 N.Y.S.2d 774, 779 n. 5 (1983). Assuming arguendo that a defect existed, the mere knowledge of a defect would not be enough to establish a direct or continuing contact between the theatre patrons and the government officials.[4] Moreover, the record in this case does not disclose defects of the magnitude recognized in *Garrett* where despite "known, blatant and dangerous violations, . . . the town affirmatively certified the premises as safe. . . ." *Id.* at 257, 447 N.E.2d at 721, 460 N.Y.S.2d at 778. Consequently, we do not construe the actions of the District in this instance as constituting an active misrepresentation of conditions existing on the premises.

In addition, appellants have not satisfied the second prong of our test as there is no

---

3. 5A DCRR § 626.7 reads in pertinent part:
   Every F assembly building, every tier or balcony and every individual room used as a place of assembly shall have exits sufficient to provide for the total capacity thereof as determined in accordance with Section 626.3. There shall be at least two Class A stairways in buildings over one story in height.
   \*   \*   \*   \*   \*   \*
   (4) Every assembly room, every tier, gallery and balcony within the room shall be provided with exits located as remote from each other as practicable in accordance with the following:

| Population per tier | Minimum Number of Exits |
|---|---|
| 0–74 | 1 |
| 75–199 | 2 |
| 200–299 | 3 |
| 300 and over | 4 |

4. We do not reach the question of whether a special relationship sufficient to establish a specific duty existed between the owners of the Cinema Follies Club and the District of Columbia.

indication of a justifiable reliance on the part of the victims. In *Warren,* we found that an emergency telephone call, which was made by a rape victim to the police, and which was followed by an inadequate police investigation, was not sufficient to establish a special relationship or justifiable reliance. If a "911" call made by a rape victim seeking police protection is not a direct enough contact to rise to the level of a special duty, the mere posting of a certificate of occupancy on the Club premises is clearly insufficient.

■ Although tragic, this case does not present the "special relationship" required to establish a duty owed to the individual plaintiffs. The law is clear that "[a]bsent a special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals, no liability may be imposed upon a municipality for failure to enforce a statute or regulation." *O'Connor v. City of New York, supra,* 58 N.Y.S.2d at 189, 447 N.E.2d at 34–35, 460 N.Y.S.2d at 486–87 (citing *Sanchez v. Village of Liberty,* 42 N.Y.2d 876, 877–78, 366 N.E.2d 870, 871, 397 N.Y.S.2d 782, 783 (1977), *dismissed on other grounds,* 44 N.Y.2d 817, 377 N.E.2d 748, 406 N.Y.S.2d 295 (1978)). Because circumstances sufficient to establish a special relationship between the District of Columbia Government and these particular appellants have not been shown, no specific legal duty can be said to have existed and the order dismissing the claims against the District of Columbia and other District officials as party defendants must be affirmed.

*Affirmed.*