AUTO WORLD, INC., Appellant

v.

DISTRICT OF COLUMBIA, Appellee.

No. 91–CV–1431.

District of Columbia Court of Appeals.

Argued April 13, 1993.
Decided June 28, 1993.

Before ROGERS, Chief Judge, and TERRY and KING, Associate Judges.

ROGERS, Chief Judge:

Appellant Auto World, Inc., appeals from the dismissal of its complaint for failure to state a cause of action under the public duty doctrine. Concluding that Auto World failed to show that it fell within the special relationship exception to the public duty doctrine, and hence failed to show that the District owed it a duty, we affirm.

## I.

Auto World is a used car dealership in Arlington, Virginia. According to the complaint,[1] in 1989 Auto World purchased a 1983 Porsche from another Arlington dealer, Carland Motors, who in turn had bought the car from Johnny Johnson. "During this period of time, in Carland's office on December 22, 1989, a call was made to the D.C. Division of Motor Vehicles (DMV) to verify that the title proffered by Johnny Johnson was true, valid, and correct." The Department "verified" that the title was "true and correct." Auto World bought the car and resold it to Rose Motor, a California business, which sold it to a Canadian dealership. The car was impounded in Canada when the Metropolitan Police Department advised that the car was stolen. Auto World was required to refund the purchase price to Rose Motor, a price that was "much higher" than what Auto World had paid for the car.[2]

The complaint alleged that "[t]he District was negligent in issuing a good title for a stolen car and for confirming it on the phone." It also alleged that the Department of Motor Vehicles "negligently allowed Mr. Johnson to fraudulently obtain good title in the District as well as confirm it on the phone." Further alleging that Auto World substantially relied to its detri-

Richard D. Stern, for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

1. In reviewing the grant of a motion to dismiss under Super.Ct.Civ.R. 12(b)(6), the court must view the record in the light most favorable to the plaintiff and accept as true the allegations in the complaint. *Wanzer v. District of Columbia,* 580 A.2d 127, 129 (D.C.1990) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Klahr v. District of Columbia,* 576 A.2d 718, 721 (D.C.1990); *cf. District of Columbia v. Cooper,* 483 A.2d 317, 321 (D.C.1984) (elements of negligence).

2. The complaint alleged that Carland is no longer in business and thus Auto World has no recourse through Carland.

ment on the title and the representations on the telephone, that the District had a duty to warn, since it was or should have been on notice that improper automobile titles were issued, and that the District failed to make proper inspections and audits of facilities that issue titles, the complaint sought $500,000 for financial losses, corporate embarrassment, harm to professional reputation, and attorneys' fees, in addition to costs and prejudgment interest.

The District filed a motion to dismiss under Super.Ct.Civ.R. 12(b)(6) on the ground that the District did not owe a duty of care to Auto World beyond the duty owed to the general public at large, and that the public duty doctrine barred Auto World's negligence claim. Following the filing of Auto World's opposition and a reply by the District, the trial judge granted the motion to dismiss the complaint. By memorandum order, the trial judge rejected "the crux" of Auto World's arguments that a special relationship arose between it and the District government after the alleged telephone call, concluding that the duty owed to Auto World was owed to the public at large, citing *Wanzer v. District of Columbia, supra* note 1, 580 A.2d 127.

## II.

■ On appeal, Auto World does not contest that the statute requiring registration of motor vehicle titles, D.C.Code § 40–703(d) (Supp.1992), is intended "to prevent theft and to expedite the recovery of stolen vehicles," and thus serves a general law enforcement purpose to which the public duty doctrine would generally apply.[3] Rather, Auto World contends that the trial judge erred in granting the motion to dismiss for three reasons: (1) the public duty doctrine is inapplicable because the District was behaving as a commercial actor, charging a non-waivable fee for vehicle titles; (2) there was a special relationship between Auto World and the District once the District verified the title in a telephone conversation and Auto World justifiably relied on

the representation; and (3) the public duty doctrine is inapplicable because Auto World claims fraud, not negligence.

■ Under the public duty doctrine:
[t]he District is subject to liability for injuries arising from the negligence of its employees only if the duty owed to the plaintiff was a special duty to that person as an individual or as a member of a class of persons to whom a special duty is owed; the District cannot be sued if the duty it owed was a general duty to the public-at-large.

*Powell v. District of Columbia,* 602 A.2d 1123, 1127 (D.C.1992). A special relationship, as an exception to the public duty doctrine, may be established by showing that a statute prescribes "mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole," *Morgan v. District of Columbia,* 468 A.2d 1306, 1314 (D.C.1983) (citation omitted), or that there have been direct or continuing contacts between the plaintiff and the District, and the plaintiff shows justifiable reliance. *Platt v. District of Columbia,* 467 A.2d 149, 151 (D.C.1983); *see also Powell v. District of Columbia, supra,* 602 A.2d at 1129; *Turner v. District of Columbia,* 532 A.2d 662, 667 (D.C. 1987).

■ The court has stated that the fact that the District functions in a commercial capacity does not necessarily make the public duty doctrine inapplicable. "Whether the District acts in a uniquely governmental capacity or as one of several business competitors does not bear on the underlying policy of the public duty doctrine to protect the government from interference in its 'legislative or administrative determinations concerning allocation of' limited public resources." *Johnson v. District of Columbia,* 580 A.2d 140, 141 n. 1 (D.C. 1990) (quoting *Warren v. District of Columbia,* 444 A.2d 1, 4 (D.C.1981) (en banc)). Consequently, the fact that the District charges a non-waivable fee for a title certificate does not make the public duty doc-

---

3. *See* S.Rep. No. 1363, 71st Cong., 3d Sess. 6 (1931) (regarding the Act of February 27, 1931, 46 Stat. 1424, 1425–26 ch. 317, § 4, which was very similar to the present statute); H.R.Rep. No. 2323, 71st Cong., 3d Sess. 6 (1931) (same).

trine inapplicable. *See Powell v. District of Columbia, supra,* 602 A.2d at 1131 (applying public duty doctrine where plaintiff paid fee to obtain registration certificate and license plates); *cf. Wanzer v. District of Columbia, supra* note 1, 580 A.2d at 131 (despite user fees, ambulance service was an exercise of police power to serve general welfare, because service was meant to protect lives, was heavily subsidized in addition to collecting fees, and did not deny service to those unable to pay); *Hines v. District of Columbia,* 580 A.2d 133, 137 n. 5 (D.C.1990); *Johnson v. District of Columbia, supra,* 580 A.2d at 141. The twenty dollar fee is, moreover, a user fee, not meant to result in surplus revenues for the District but merely to make the title office self-supporting. D.C.Code § 40-703 (Supp. 1992); *see* S.REP. NO. 1363, and H.R.REP. No. 2323, *supra* note 3.

■■■ In addition, the telephone call to the Department of Motor Vehicles was insufficient direct contact to establish a special relationship under the two-prong test of *Platt v. District of Columbia, supra,* 467 A.2d at 151. The caller neither sought nor received services which were any different than those provided to other members of the public.[4] *Compare Wanzer v. District of Columbia, supra* note 1, 580 A.2d at 132 ("[a] one-time call to 911 for help does not establish a special relationship. . . . [The decedent] neither asked for, nor would he in all likelihood have received, a response different in any way from the response generally made to such requests, *i.e.,* the dispatch of an ambulance") *with*

Powell v. District of Columbia, supra, 602 A.2d at 1131 (where plaintiff applied for, paid fee regarding, and received car registration and license plates, it was foreseeable that plaintiff would be harmed by faulty processing of registration and license plate numbers). *See Hines v. District of Columbia, supra,* 580 A.2d at 136, 138–39 ("the mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty"); *Klahr v. District of Columbia, supra* note 1, 576 A.2d at 719; *cf. District of Columbia v. Forsman,* 580 A.2d 1314, 1319 (D.C. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 173, 116 L.Ed.2d 136 (1991). Auto World does not allege that the District Court did not verify titles for the general public and provided that service only to it. The caller merely asked whether the title was valid and received a response just like that which would be given to any other inquirer. Of course, the fact that the employee of the Department of Motor Vehicles happened to be wrong about the fact that Mr. Johnson held a valid title to the car does not in itself establish a special relationship. *Cf. Morgan v. District of Columbia, supra,* 468 A.2d at 1311; *Platt v. District of Columbia, supra,* 467 A.2d at 151.

Auto World maintains that a single telephone call was enough to establish a special relationship because no greater contact was possible or reasonable under the circumstances. But its proposition misses the mark.[5] As the District points out, the stat-

---

4. For purposes of this appeal we will assume that Auto World, or its agent, made the telephone call.

5. Auto World did not contend in its brief that payment of the title fee by Mr. Johnson constitutes the direct contact necessary for a special relationship. *Cf. Powell v. District of Columbia, supra,* 602 A.2d at 1123, 1131. "[T]he significance of the user-fee is not that it exists but that it was actually paid, thereby establishing a direct and individualized contact between [the plaintiff] and the Bureau of Motor Vehicle Services." *Id.* at 1131 n. 12 (distinguishing *Wanzer v. District of Columbia, supra* note 1, 580 A.2d at 133, in which the plaintiff never paid the fee because the ambulance never arrived). There is no indication in the record that Auto World

paid a fee for the District's telephone verification of the car title. At oral argument, Auto World's counsel asserted that Mr. Johnson, like the plaintiff in *Powell, supra,* 602 A.2d 1123, had a direct contact with the District when he paid the fee, completed forms, and received the title certificate, and that Mr. Johnson could, therefore, sue the District under the special relationship exception. Therefore, counsel argued, Auto World can sue the District because it stands in Mr. Johnson's shoes as a successor of interest and the equivalent of a holder in due course. Even if Mr. Johnson had a direct contact with the District and Auto World, as a successor, were able to assume that contact, Mr. Johnson could not have sued the District for negligently issuing a flawed title because, as

utory scheme provides protection for the car owner and to the general public. Other protections—civil and criminal—are available to subsequent purchasers. While the titling system assists businesses such as Auto World, by facilitating their operations, this is distinct from a statutory scheme in which the District also assumes all financial risks in those transactions. In effect, as the District points out in its brief, Auto World seeks to have the court rule that "once the District issues an automobile title certificate for a [twenty] dollar fee, everyone in the chain of title after that can treat the certification as if it were title insurance." [6]

■ Even if Auto World were able to show that it had sufficient direct contact with the District, it would be unable to meet the second prong of the *Platt* test, which requires justifiable reliance. *See Platt, supra,* 467 A.2d at 151. The complaint alleged that Auto World would not have bought the car without the District's

verification because the statement on the title of zero mileage was so unusual. Auto World's opposition to the motion to dismiss implies that the District's verification of title dissuaded Auto World from investigating further. But, in view of the title statement of zero mileage on a 1983 car, which Auto World admitted was "a most unusual circumstance," Auto World could not have justifiably relied on the District's telephone statement that the title was valid.[7] *Cf. Powell v. District of Columbia, supra,* 602 A.2d at 1132 (a plaintiff could justifiably rely on the District to accurately process her license and registration number). Even if Auto World did not know that, as its complaint alleged, the District had issued flawed certificates in the past, it still could not show that it had justifiably relied on the information it received as a result of a single telephone call. *See Keller v. Judd,* 671 S.W.2d 604, 606–07 (Tex.Ct.App.1984) (prudent buyer cannot simply rely on title certificate but must look to the "whole context of a sale").

pled in the complaint, he fraudulently induced the District to issue the title.

In addition, the fact that the District's alleged negligence consisted of an affirmative misstatement over the telephone and issuance of a flawed title, rather than mere inaction, does not establish a special relationship. *See Powell v. District of Columbia, supra,* 602 A.2d at 1128; *cf. District of Columbia v. Forsman, supra,* 580 A.2d at 1317 n. 5.

6. Auto World does not allege that a special relationship arose as a result of a statute that created a special class, of which Auto World is a member, which is meant to benefit from the issuance of car titles. *See District of Columbia v. Forsman, supra,* 580 A.2d at 1317. The statute authorizing the District to issue titles to motor vehicles benefits the general public rather than any specific class of persons. *See* S.Rep. No. 1363, and H.R.Rep. No. 2323, *supra* note 3, ("registration of titles of motor vehicles in order to prevent theft and to expedite the recovery of stolen vehicles"). This law enforcement purpose benefits not only car owners but other members of the general public, who might be endangered by reckless driving or other behavior that may occur during a car theft and the use of a stolen vehicle. Thus, in *Powell v. District of Columbia, supra,* 602 A.2d at 1128 (public duty "doctrine applies to law enforcement services"), the court stated, with regard to a vehicle registration statute, that:

[a]lthough D.C.Code § 40–102(c) (1990 Repl.) requires the District to issue a certificate and

identification tag to qualified motor vehicle owners. . . . [i]mproved law enforcement protects not only motor vehicle owners but others, such as pedestrians and passengers, some of whom do not own motor vehicles. Therefore, as the District maintains, the government's interest and purpose in obtaining the information about [plaintiff's] car was limited to law enforcement, and its duty was to the general public, not to provide [the plaintiff] with benefits or services in any manner different from those provided to members of the general public. In this sense, [the plaintiff] was treated as was everyone else who applied for registration.

*Powell v. District of Columbia, supra,* 602 A.2d at 1129–30. *See also District of Columbia v. Forsman, supra,* 580 A.2d at 1319; *cf. Wanzer v. District of Columbia, supra,* 580 A.2d at 133. Appellant admitted at oral argument that in *Powell* the court found that a similar statute did not create a special relationship. While a statute may also create a special relationship where it "affords an individual the opportunity to seek its protection by taking certain actions," *Powell v. District of Columbia, supra,* 602 at 1130, no statute cited or found provides that the District will answer car dealerships' telephone enquiries about car titles.

7. Auto World's claim of reliance is made a little stronger by the fact that the complaint alleges negligent action, rather than inaction, by the District. *See Powell v. District of Columbia, supra,* 602 A.2d at 1131 n. 11.

Finally, Auto World's complaint sounded in negligence, not fraud.[8] Although its opposition to the motion to dismiss referred to negligence and fraud, Auto World failed in its complaint to plead its claim of fraud with sufficient specificity. *See Woodruff v. McConkey,* 524 A.2d 722, 728 (D.C.1987) ("fraud must be particularly pleaded and established by clear and convincing evidence"); *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C.1984) (plaintiff must allege each element of fraud: "(1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) upon which reliance is placed"); *Bennett v. Kiggins,* 377 A.2d 57, 59–60 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); Super.Ct.Civ.R. 9(b) (circumstances of fraud "shall be stated with particularity"). Auto World does not contend that the Department of Motor Vehicles' employee who responded to the telephone call acted with knowledge of the falsity of the car title or with intent to deceive Auto World. Instead, the complaint alleges that the Department of Motor Vehicles "negligently allowed Mr. Johnson to fraudulently obtain good title in the District as well as confirm it on the phone." Even assuming Auto World could recover damages from the District for issuance of a

false title to a third person, who fraudulently obtained it, *but cf. Powell v. District of Columbia, supra,* 602 A.2d at 1130 n. 10; *Platt v. District of Columbia, supra,* 467 A.2d at 151, Auto World has not alleged the circumstances of the fraud with sufficient particularity. There is no indication of how the fraud was perpetrated, who might have committed the alleged fraud, or at what stage of the title process the fraud occurred. There are neither specifics in the complaint concerning the alleged fraud nor an allegation of conspiracy to defraud.[9] *See Higgs v. Higgs, supra,* 472 A.2d at 877. The trial judge observed in its memorandum order that "[a]lthough the Plaintiff's Opposition to the Motion to Dismiss alludes to claims of fraud, an inspection of the complaint reveals no such claims." We agree. *See Bennett v. Kiggins, supra,* 377 A.2d at 59–60.

Accordingly, we affirm the order dismissing the complaint for failure to state a cause of action.

---

8. On the Civil Division's information sheet, when asked the "nature of [the] suit," appellant checked the box marked "negligence," but not the box marked "fraud."

9. Auto World's opposition to the motion to dismiss stated only that:

discovery will show [that] about 180 fraudulent titles were issued by employees of the District.... Discovery may well reveal underlying criminal acts by the employees and violations of the District's own rules, thus the nature of the proof may be criminal acts by employees rather than just simple negligence.