**Hullon GRIGGS, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., Defendants.**

**No. Civ.A. 99–1552(RMU).**

United States District Court, District of Columbia.

Aug. 31, 1999.

---

Kim M. DiGiovanni, Bowie, MD, for plaintiff.

Robert John Kniaz, Gerard Joseph Stief, Washington, DC, for Washington Metro-

politan Area Transit Authority, Doug Haymans, defendants.

Christine Clare Gallagher, Office of Corp. Counsel, D.C., Washington, DC, for District of Columbia Metro. Police, defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### Denying the District of Columbia's Motion to Dismiss

### I. INTRODUCTION

This matter comes before the court upon the District of Columbia's motion to dismiss that portion of the plaintiff's complaint which alleges negligence and improper supervision on the part of the District of Columbia Metropolitan Police Department.[1] In short, this case presents the question of whether the District of Columbia owes a general duty to supervise the actions of Washington Metropolitan Area Transit Authority (hereinafter "WMATA") police officers during the course of joint operations. After a careful review of the parties' submissions and the applicable case law, the court concludes that given the facts alleged in the instant case, the District of Columbia may be held liable for the actions of a WMATA officer. Accordingly, the court shall deny the District's motion to dismiss.

### II. BACKGROUND

On May 26, 1996, at approximately 4:40 a.m., the plaintiff, Hullon Griggs, was illegally inside the premises of the Madison Grocery store in Northwest D.C. In response, Officer George Gray of the District of Columbia Metropolitan Police Department (hereinafter "MPD") was dispatched to the location. At Officer Gray's request, a K-9 unit was also summoned to the scene. Shortly thereafter, WMATA Offi-

1. In addition to the plaintiff, the co-defendant in this case, WMATA, has also filed a brief in opposition to the District's motion to dismiss.

cer Doug Haymans and dog "Buddy" arrived to assist with a search of the premises. The remaining details of events are in dispute. Mr. Griggs alleges that during the course of his arrest, he was subjected to numerous attacks by Officer Haymans's K-9 "Buddy." Specifically, Mr. Griggs claims that when he was found by Buddy, the dog began to bite his right arm. (Compl. at 4.) After Officer Haymans ordered Mr. Griggs to place his hands on his head, Officer Haymans allegedly ordered Buddy to attack Mr. Griggs again. (Compl. at 4.) Following a brief respite from the dog's attack, Mr. Griggs claims he was commanded to drop to his knees, and when he did, Officer Haymans once again permitted the dog to resume its attack. (Compl. at 5.)

Mr. Griggs was then taken into custody by two MPD police officers. After documenting the injuries that Mr. Griggs had incurred as a result of the K-9's attack, the two MPD officers transported Mr. Griggs to D.C. General Hospital where he was treated and released. A few days later, however, Mr. Griggs was admitted to Howard County General Hospital and diagnosed with an "infected hematoma secondary to dog bite." (Compl. at 8.)

Consequently, Mr. Griggs filed suit against Officer Doug Haymans, WMATA and the District of Columbia seeking damages for the injuries that he suffered. In response, co-defendant District of Columbia filed a motion to dismiss or, alternatively, for summary judgment, claiming that it owed no duty to monitor the action of a WMATA transit officer. Counts I and II against Officer Haymans and WMATA are outside the scope of this Opinion, and the court will only address the issue of whether the District of Columbia had a duty to supervise Officer Haymans and his K-9 during the course of Mr. Griggs's arrest.

## III. ANALYSIS

### A. Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted does not test whether the plaintiff will prevail on the merits, but instead, whether or not the claimant has properly stated a claim. See Scheuer v. Rhodas, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed.R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); see also Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. See Maljack Prods. v. Motion Picture Ass'n, 52 F.3d 373, 375 (D.C.Cir. 1995). The facts as alleged by Mr. Griggs will therefore be viewed in such a light.

### B. Relationship Between WMATA Authorities and the District of Columbia

The Washington Metropolitan Area Transit Authority ("WMATA") was created as an interjurisdictional compact between Maryland, Virginia and the District of Columbia to create a body empowered to improve transit and planning developments within the D.C. metropolitan area. D.C.Stat. § 1–2431, art. II(2). In addition to a wide range of granted authority, the compact established a police force, known as the Metro Transit Police, to "provide protection for its patrons, personnel, and Transit facilities." D.C.Stat. § 1–2431(76(a)). Generally, transit officers were given the same power of arrest as their police department counterparts; however, the statute notes that any conflict between Metro Transit Police policy and the rules of any respective signatory (Maryland, D.C. or Virginia) shall be resolved in favor of the latter. D.C.Stat. § 1–2431(76(e)).

Since WMATA's conception in 1981, the unique nature of the compact has spawned a great deal of litigation regarding the proper scope of WMATA's jurisdiction and liability. Indeed, many of these cases turn upon whether WMATA can be considered an agency of the District of Columbia. This distinction has not always been easy to discern. In *Colbert v. United States*, 601 A.2d 603, 605 (D.C.1992), the D.C. Court of Appeals established that WMATA was not a federal agency, and was in fact an instrumentality and agency of each of the signatory parties, including the District of Columbia. *See also* D.C.Code § 1–2431(4) (WMATA is an "instrumentality and agency of each of the signatory parties...."); *Qasim v. WMATA*, 455 A.2d 904 (D.C.1983). This finding was likewise affirmed in *The Bootery, Inc. v. WMATA*, 326 F.Supp. 794, 798–99 (D.D.C.1970), in which this court held that "[t]he Authority itself is merely an agency of each of the signatory parties including the United States on behalf of the District of Columbia...." (footnotes omitted). There are a number of cases, however, in which courts have held that WMATA is not an agency of the District for certain purposes. *See, e.g.*, *KISKA v. WMATA*, 167 F.3d 608 (D.C.Cir.1999) (holding that WMATA is not an agency of the District of Columbia for the purposes of the Freedom of Information Act); *Strange v. Chumas*, 580 F.Supp. 160 (D.D.C.1983) (holding that WMATA warrants Eleventh Amendment protection and was thus considered a "state" and not an agency of the District).

■ Based upon the facts alleged in this case, however, the court need not determine whether or not WMATA's police force is, in fact, an agency of the District for all purposes. This case presents a more narrow question for the court's review, i.e., whether Officer Haymans was acting under the authority of the District of Columbia when the particular assault alleged in Mr. Griggs's complaint took place. If he was, then the District may be held liable for Officer Haymans's actions regardless of WMATA's agency status. In short, the critical inquiry at this stage is whether Officer Haymans may be considered an "agent" of the District of Columbia given the particular circumstances alleged in the complaint. After a careful review of the complaint, this court concludes that, assuming the facts as alleged by the plaintiff are true, Officer Haymans may have been acting under the direction of MPD police officers. Accordingly, Mr. Griggs may pursue his action against the District of Columbia under the theory that the District is potentially liable for the alleged torts committed under its supervision.

## C. Extent of WMATA's Tort Liability

The WMATA Compact states that "[t]he exclusive remedy for ... torts for which the Authority shall be liable ... shall be suit against the Authority." D.C.Stat. § 1–2431(80). In the instant case, the District of Columbia argues that because Officer Haymans was an employee of WMATA, the District had no duty to supervise Officer Haymans's actions. To support this argument, the District cites a portion of the WMATA compact which states: "The members of the Metro Transit Police shall have concurrent jurisdiction in the performance of their duties with the duly constituted law enforcement agencies of the Signatories...." D.C.Stat. § 1–2431(76(a)). The District contends that given the concurrent jurisdiction of WMATA and the MPD, the District holds no duty to control or supervise the actions of WMATA officers during the course of police procedures. Instead, the District argues that WMATA is an independent contractor of sorts. The court, however, disagrees.

### 1. Jurisdictional Argument

While the WMATA compact grants concurrent jurisdiction to both District and Transit police, the jurisdiction of WMATA officers is extremely circumscribed. Specifically, "the jurisdiction of the Metro

Transit Police shall include all the Transit facilities (including bus stops) owned, controlled, or operated by the Authority." D.C.Code § 1–2431(76(a)). Further, on-duty Metro Transit Police officers are only authorized to make arrests outside of transit facilities when "immediate action is necessary to protect the health, safety, welfare, or property of an individual from actual or threatened harm or from an unlawful act." *Id.; cf. United States v. Foster,* 566 F.Supp. 1403 (D.D.C.1983) (holding that evidence seized by transit officer was suppressible because search was executed outside WMATA jurisdiction).

In the instant case, Officer Haymans was summoned to the scene by an MPD officer to aid in a search wholly outside the jurisdiction of the transit police. Moreover, based upon the facts submitted to the court, there is no evidence of any threat which would require immediate action by Officer Haymans. Following the disputed attack, Mr. Griggs was taken into custody by MPD officers and escorted to the local police headquarters. Indeed, from the initial encounter with Mr. Griggs to his eventual detention, the MPD officers played a central and seemingly lead role in the chain of events. In contrast, Officer Haymans merely provided additional support at the request of an MPD officer. Therefore, the District assertion that WMATA and the District police officers had concurrent jurisdiction at the time of the arrest does not suffice to excuse the District from potential liability.

### 2. Independent Contractor Status

▮ The District's characterization of WMATA as an independent law enforcement contractor is similarly flawed. Regardless of whether or not WMATA was an independent contractor, the central issue is whether Officer Haymans was acting as an "agent" of the District during the course of the search. An "agent" has been defined as "one who is authorized by another (principal) to act on his behalf."

*Johnson v. Bechtel Associates Prof. Corp.,* 717 F.2d 574, 579 (D.C.Cir.1983) (reversed on other grounds). Generally an agent-principal relationship is characterized by the presence of two elements: (1) an indication by the principal that the agent will act on his behalf and subject to his control, (2) a manifestation of consent by the agent to so act. *See Johnson,* 717 F.2d at 578 (citing Restatement (Second) of Agency § 1 (1958)). In determining the extent of control and consent, courts often focus upon the terms of the contract and the actual dealings between the parties. *See id.*

At the current stage of this case, however, neither side has had the opportunity to characterize the manner in which WMATA and MPD officers interact during the course of joint operations. Indeed, the question of whether or not Officer Haymans qualifies as an "agent" of the District depends largely on evidence and testimony which has not yet been presented to the court. Given these uncertainties, it would be premature to grant dismissal.

▮ Should Mr. Griggs establish, however, that the District of Columbia routinely maintains supervisory control over investigations within its own exclusive jurisdiction or did so in this particular instance, the District may be held liable upon a theory of vicarious liability. "[A] servant authorized to make arrests ordinarily subjects his master to liability for using excessive force to make an arrest, or for making an unlawful arrest. [If the] officer [in question] was authorized by the District of Columbia to make arrests, misuse of that authority, even though intentional, may nevertheless result in vicarious liability on the part of the District." *Carter v. Carlson,* 447 F.2d 358, 366–67 (D.C.Cir.1971) (reversed on other grounds). It is important to note, however, that "it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with

that actual or constructive knowledge, failed to adequately supervise the employee." *Giles v. Shell Oil Corporation*, 487 A.2d 610, 613 (D.C.1985). While this may be disputed at a later point, it is evident that there are sufficient grounds for liability to preclude a 12(b)(6) motion at this stage of the proceedings.

### 3. Public Duty Doctrine

■ When attempting to hold the District of Columbia liable for a tortious injury, claimants must also contend with the "public duty doctrine." Under the public duty doctrine, "a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Powell v. District of Columbia*, 602 A.2d 1123, 1129 (D.C.1992)(citations omitted) (citing *Klahr v. District of Columbia*, 576 A.2d 718, 719 (D.C.1990)); *accord Auto World, Inc. v. District of Columbia*, 627 A.2d 11 (D.C.1993); *Powell v. District of Columbia*, 602 A.2d 1123 (D.C.1992). In *Platt v. District of Columbia*, 467 A.2d 149 (D.C.1983), the court adopted a two-prong test for determining whether a "special duty" exists in fact. The plaintiff must demonstrate: (1) a direct contact or continuing between the victim and the governmental agency or official; and (2) a justifiable reliance on the part of the victim. *See Platt*, 467 A.2d at 151; *Trifax v. District of Columbia*, 1999 WL 412818 (D.D.C. 1999).

■ "The first prong, which focuses on the contact between the plaintiff and the public official, requires some form of privity between the police department and the victim that sets the victim apart from the general public ..., that is, the victim must be a reasonably foreseeable plaintiff." *Warren v. District of Columbia*, 444 A.2d 1, 11 (D.C.1981). Given the egregious nature of the charges alleged in Mr. Griggs's complaint, the contact between Officer Haymans and the plaintiff was cer-

tainly direct and the injury foreseeable. With regard to the second prong, there was a clear and justifiable reliance on the part of Mr. Griggs that Officer Haymans would take reasonable care during the course of the arrest. Generally, the District police owe individuals a duty to use reasonable care to protect them from an excessive risk of harm. *See Morgan v. District of Columbia*, 449 A.2d 1102, 1108 (D.C.1982). Similarly, as a member of the WMATA police force, Officer Haymans is subject to the same duty of reasonable care. *See* D.C.Stat. § 1–2431(76(b)). Viewing Mr. Griggs's allegations in their most favorable light, Officer Haymans's behavior breached this duty, and therefore, the District may be held liable for its failure to intervene.

### 4. Governmental Immunity

■ Claims against government agencies must also withstand the scrutiny associated with sovereign immunity. To determine whether the District of Columbia has waived this immunity, so as to make it liable in tort, courts have traditionally applied the discretionary-ministerial test. "Under this standard the District is immune from suit only if the act complained of was committed in the exercise of a discretionary function, if submitted in the exercise of a ministerial function, the District must respond." *McKethean v. WMATA*, 588 A.2d 708, 715 (D.C.1991). This court has held that "the acts of training, instructing, supervising and controlling ... [an] individual officer are ... ministerial. From the very nature of these activities, it is clear that they do not involve the kind of policy-formulating, judgment-making processes encompassed by the term discretionary." *Wainwright v. WMATA*, 903 F.Supp. 133, 139 (D.D.C. 1995) (quoting *Thomas v. Johnson*, 295 F.Supp. 1025, 1031 (D.D.C.1968)) (internal quotation marks omitted). In light of this holding, the alleged failure of the District officers on the scene to control and supervise Officer Haymans's actions would qual-

ify as ministerial for the purposes of the District's potential liability. Of course, during the discovery phase, the District may provide evidence that, as a matter of policy, MPD officers are not permitted to supercede the authority of WMATA officers. This could potentially provide the District with a cloak of sovereign immunity. At this point, however, the precise relationship between WMATA and the MPD remains too undefined to warrant dismissal of Mr. Griggs's claims against the District. In the absence of compelling evidence that Officer Haymans was acting wholly apart from District police supervision, this court concludes that the plaintiff has alleged facts sufficient to establish potential liability on the part of the District of Columbia.

## IV. CONCLUSION

For the reasons stated in this Memorandum Opinion, the District of Columbia's motion to dismiss shall be denied. The required Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 31 day of August, 1999.