James Russell **WIGGINS, Jr., Plaintiff,**

v.

**DISTRICT CABLEVISION, INC., a District of Columbia Corporation; District Cablevision, a District of Columbia Limited Partnership; T.C.I. of D.C., Inc., a District of Columbia Corporation, T.C.I., East, Inc.; A. Bruce Osborn, Defendants.**

Civ. A. No. 92–75.

United States District Court, District of Columbia.

May 13, 1994.

John C. LaPrade, Washington, DC, Frazier Walton, Jr., Alexandria, VA, for plaintiff.

Burt H. Whitt, Kaufman Canoles, Norfolk, VA, Thomas Patrick Murphy, Reed, Smith, Shaw & McClay, McLean, VA, William Joseph Dean, Grad, Logan & Klewans, Alexandria, VA, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on plaintiff's motion for leave to amend his complaint and defendants' motions to dismiss plaintiff's First Amended Complaint ("Complaint") for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon consideration of the filings of counsel and the relevant law, plaintiff's motion for leave to amend is denied, and defendants' motions to dismiss will be granted in

part and denied in part in accordance with this memorandum opinion.

## I. Introduction.

Counts one and two of the Complaint allege violations of the Fair Credit Reporting Act (hereinafter "FCRA" or "the Act"). 15 U.S.C.A. §§ 1681–1681t (1982). In addition, count two alleges conspiracy to violate the FCRA, conspiracy to interfere with plaintiff's employment, and a common-law, breach-of-employment contract claim.[1] Count three alleges a common law defamation claim. In count four, plaintiff claims that the defendants maliciously and tortiously interfered with plaintiff's employment contract, and in count five plaintiff asserts a common-law fraud cause of action.

### A. Motion to Dismiss

Plaintiff's factual allegations must be presumed true and liberally construed in favor of the plaintiff when reviewing the adequacy of a complaint for purposes of a Rule 12(b)(6) motion. *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Georgia*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977)). In addition, the plaintiff must be given every favorable inference that may be drawn from his allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a pre-

sumption of truthfulness." 2A *Moore's Federal Practice*, § 12.07, at 63 (2d ed. 1986) (footnote omitted); *see Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy*, 278 F.2d 252, 254 (D.C.Cir.), *cert. denied*, 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)).

Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth*, 820 F.2d at 1254 (citations omitted); *Phillips*, 591 F.2d at 968. Plaintiff's factual allegations are set out below.

### B. Facts

In December 1989, plaintiff James Russell Wiggins, Jr., was hired by defendants[2] as a salesperson. Compl. ¶ 11. Defendants informed Mr. Wiggins of their intent to do a background check in connection with offering him employment, including a criminal and motor vehicle record check. *Id.* The Equifax Services, Inc. ("ESI") report "indicat[ed] that Plaintiff had a felony cocaine conviction."[3] *Id.* ¶ 12. When defendants advised Mr. Wiggins of this information, he denied having any criminal record. *Id.* ¶ 13.

According to plaintiff, defendants were aware of the inaccuracies contained in the Equifax report on January 12, 1990, yet they failed to expunge the alleged conviction from plaintiff's personnel file. *Id.* ¶¶ 15, 40. De-

---

1. In this count, plaintiff also alleges:

> During the period January 19 through February 25, 1990, and at other times in 1990, 1991 and through the present time, TCI East/District Cablevision, by and through its agents and employees, slandered, libelled, and defamed Plaintiff by publishing and distributing the False Wiggins Consumer Report to third parties. TCI East/District Cablevision continued to maliciously claim that Plaintiff was tried and found guilty of a serious drug charge when they had actual knowledge that such claim was completely false.

Compl. ¶ 25. Since count two is apparently intended to deal with violations of the FCRA and count three is intended to deal with common-law violations like defamation, the common-law claims of slander, libel, and defamation will be addressed in count three. Defamation claims are sprinkled throughout the complaint; they will all be dealt with in § IV of this memoran-

dum opinion. In fact, the chaotic nature of plaintiff's complaint is evidenced by plaintiff's allegations of numerous facts in one count that offer no support whatsoever for the stated cause of action. Plaintiff then states "[p]laintiff repeats and realleges [p]aragraphs [x] through [y] above as if fully set forth herein." All of plaintiff's facts in support of a particular cause of action are considered under the corresponding heading within this opinion, regardless of the heading under which the allegations were pled.

2. Defendants District Cablevision, Inc., District Cablevision (a District of Columbia Limited Partnership), TCI East, Inc., and TCI of D.C., Inc., are collectively referred to herein as "defendants."

3. The erroneous report, in fact, related to a March 1989 misdemeanor drug plea in D.C. Superior Court of one James *Ray* Wiggins.

fendants then terminated Mr. Wiggins on January 18, 1990. *Id.* ¶¶ 15, 29, 32(c).

In mid-January 1990, defendants allegedly contacted another of Mr. Wiggins' employers, Philip Morris, Inc., and relayed the erroneous conviction information contained in the report, despite defendants' knowledge of the inaccuracy of the information.[4] *Id.* ¶¶ 16, 35, 48. Thereafter Philip Morris discharged plaintiff on February 6, 1990. *Id.* ¶¶ 39, 49–50.

In an attempt to cover up their involvement in the aforementioned acts, defendants supposedly made false entries in plaintiff's employment records in March 1990. *Id.* ¶¶ 32(f), 53. Plaintiff now seeks $35 million dollars in damages.

## II. Willful Violations of the Act.

Count one alleges willful violations of section 1681m(a)–(c) of the Act. Plaintiff claims that defendants' willful violations are threefold: First, defendants did not give plaintiff required notice under the Act and made "no disclosure ... in connection with plaintiff's rights" when they fired him, *id.* ¶ 19; second, defendants willfully failed to give plaintiff appropriate notice of his right to make a written request challenging the incorrect information contained in the consumer report at the time the adverse action was communicated to him, *id.* ¶¶ 17, 19; and third, defen-

**4.** Defendants also allegedly published this information regarding his criminal record "to third parties" throughout identified and unidentified periods of 1990 and 1991. Compl. ¶ 25. *See supra* § III.

**5.** There is no question in this case that defendants are users of this information and not consumer reporting agencies. In Plaintiff's Memorandum in Opposition to Defendant District Cablevision's Motion to Dismiss, plaintiff asserts for the first time that defendants "act[ed] as a *de facto* Consumer Reporting Agency pursuant to 15 USC § 1681a(f) because it had acted both as Equifax' agent and on its own in evaluating and distributing a consumer report in interstate commerce fraudulent." Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at ¶ 10.

Section 1681a(f) states:
The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers

dants "neither had nor used any 'reasonable procedure' to assure compliance" with 15 U.S.C.A. § 1681m(a) and (b) "as required by the Fair Credit Reporting Act," *id.* ¶ 20.

Due to the convoluted nature of plaintiff's pleadings, it is difficult to discern whether plaintiff intended to assert a claim for a willful violation of section 1681i of the FCRA. In an overabundance of caution, this court will treat count two as also asserting a violation of section 1681i of the Act.

### A. Willful Violation of Section 1681m(a)

■ One of the central purposes of the FCRA is to protect an individual from inaccurate information in a consumer report used as a factor in determining the individual's eligibility for employment. *See* 15 U.S.C.A. § 1681(b) (1982). In attempting to achieve this goal, Congress imposed different obligations upon consumer reporting agencies that provide consumer credit information and *users* of consumer reports. *Compare id.* §§ 1681c–1681e *with id.* § 1681m.

■ Users have a limited responsibility. Under the Act, the user[5] must advise the consumer of the name and address of the consumer reporting agency that provided the report when the consumer is adversely affected by the dissemination of information provided for employment purposes.[6] The

for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C.A. § 1681a(f) (1982). Defendants do not qualify as a consumer reporting agency under this definition; plaintiff's suggestion that defendants acted as a *de facto* consumer reporting agency is without merit.

**6.** *See* 15 U.S.C.A. § 1681m(a) (1982). The Act states:

Whenever credit or insurance for personal, family, or household purposes, or employment involving a consumer is denied ... because of information contained in a consumer report from a consumer reporting agency, the user of the consumer report shall so advise the consumer against whom such adverse action has been taken and supply the name and address of the consumer reporting agency making the report.

*Id.; see Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 172 (5th Cir.1975) ("[T]he only requirement

aim of this notice requirement is "to enable the subject of a consumer report to request disclosure from the reporting agency of the nature and scope of the information in his file." *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 149 (5th Cir.1983). Failure to comply with the "user" provision results in the imposition of civil liability. *See* 15 U.S.C.A. §§ 1681n, 1681o (1982).

■ Although "willful" is not defined in the Act, neither malice nor evil motive are necessary to establish a finding of "willfulness." *See Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 (5th Cir.1993) (citing *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir.1983)). For purposes of this section of the Act, willfulness can be demonstrated by a showing of "knowingly and intentionally committt[ing] an act in conscious disregard for the rights of others." *See id.* at 293 (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987)).

■ Defendants propound two defenses to plaintiff's claim of willful violation of the user provision. Defendants first contend that plaintiff fails to specifically allege that defendants did not disclose the name and address of the consumer reporting agency making the report to Mr. Wiggins. Notwithstanding, plaintiff's claim appears to be adequate on its face. Plaintiff states that "when District Cablevision fired plaintiff it made *no disclosure to him in connection with plaintiff's rights*" under the Act. Compl. ¶ 19 (emphasis add-

ed). This statement coupled with plaintiff's allegation that defendant failed "to comply with the provisions of the Act § 1681m(a)–(c)," Compl. ¶ 18, is sufficient to survive challenge.[7]

Second, defendants maintain that they advised Mr. Wiggins of the adverse criminal record information contained in the consumer report provided to them by Equifax Services, Inc. Defs.' Mot. Dismiss at 5. It is undisputed that Mr. Wiggins was made aware of the inaccurate information contained in the consumer report. However, the statute requires the user to disclose the name and address of the reporting agency when an employment opportunity is denied.[8]

■ An inference could be drawn that Mr. Wiggins' was given some but not all of the information required under the statute. Mr. Wiggins' termination did prompt him to visit the regional office of ESI one day after being fired, suggesting that defendants may have informed him of at least the name of the consumer reporting agency issuing the report.[9] However, plaintiff may have only been told that an Equifax report turned up negative information regarding his criminal history. Mr. Wiggins may have then taken it upon himself to seek out this company and confront those responsible for disseminating such erroneous information. Therefore, facts exist which could provide a basis for relief, and defendants' motion to dismiss with respect to this claim must be denied.[10]

placed upon a "user" of a credit report is the duty to disclose the name and address of the reporting agency when credit is denied.") (citation omitted); *Morrissey v. TRW Credit Data*, 434 F.Supp. 1107, 1108 (E.D.N.Y.1977).

**7.** Plaintiff's Memorandum in Opposition to Defendant District Cablevision's Motion to Dismiss clarifies his intent with respect to this count of the Complaint: "[Defendants] did not advise Plaintiff of Equifax' correct name or its address in violation ... of the Fair Credit Reporting Act." *See* Pl.'s Mem.Opp'n Defs.' Mot. Dismiss at ¶ 1.

**8.** The facts surrounding this claim do suggest that the purpose of the user notice requirement was satisfied. As stated above, it is undisputed that plaintiff denied the allegations to his em-

ployer and requested reinvestigation. Compl. ¶ 13.

**9.** *See Wiggins v. Equifax Services, Inc. et al.* (C.A. 90–199). Of course, it is well-settled law that the court may take judicial notice of facts in other related cases in this Court. *See Fletcher v. Evening Star Newspaper Co.*, 133 F.2d 395, 395 (D.C.Cir.1942), *cert. denied* 319 U.S. 755, 63 S.Ct. 1163, 87 L.Ed. 1708 (1943).

**10.** It should be noted that the remainder of the viable claims in the case, all state-law claims, are being entertained solely as a result of this fact issue as to whether or not Mr. Wiggins was specifically informed of the name *and address* of the consumer reporting agency, despite his knowledge of the reporting agency responsible for the erroneous information.

## B. Willful Violation of Section 1681m(b)

The Act also requires users of information to disclose the nature of certain information obtained from persons other than consumer reporting agencies upon a *consumer*'s written request. The user of the information must make the right to make such request clear to the consumer when any adverse action is communicated to the consumer. *See* 15 U.S.C.A. § 1681m(b) (1982). The statute states:

> Whenever credit for personal, family, or houshold [sic] purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the time such adverse action is communicated to the consumer.

*Id.*

■■■ Plaintiff claims that defendants willfully failed to give him appropriate notice of his right to make a written request challenging the incorrect information contained in the consumer report provided by the consumer reporting agency at the time the adverse action was communicated to him. Compl. ¶¶ 17, 19. However, plaintiff's reliance on this statute is misplaced for two reasons. First, this statute requires alerting consumers to information provided by persons other than consumer reporting agencies. Mr. Wiggins does not allege that persons other than Equifax provided information to defendants, and there is no duty upon a user of information to advise or encourage a consumer to make a written request regarding information in a consumer report provided by a consumer reporting agency. Second, this section of the statute only applies to consumer reports created for *credit purposes*. Although section 1681m(a) applies to reports relating to "credit or insurance for personal, family, or household purposes, or employment," section 1681m(b) only applies when "credit for personal, family, or houshold [sic] purposes involving a consumer is denied or the charge for such credit is increased either wholly or partly because of information obtained from a person other than a consumer reporting agency." Thus, plaintiff's claim is without merit, and defendants' motion to dismiss with regard to this claim is granted.

## C. Willful Violation of Section 1681m(c)

■■■ Once the Act created this potential reporting liability for users of consumer report information, Congress expressly limited the potential liability of users. No person may be held liable with respect to the user provisions if the user maintains reasonable procedures to assure compliance at the time of the alleged violation. 15 U.S.C.A. § 1681m(c) (1982).[11] However, this statutory provision does not impose any "requirements" upon the user that form a basis for civil liability.[12] Therefore, defendants' request for dismissal with respect to this claim is granted.

---

**11.** The text of this section reads as follows:
No person shall be held liable for any violation of this section if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of subsections (a) and (b) of this section.
*Id.* § 1681m(c).

**12.** Plaintiff claims that "District Cablevision neither had nor used any 'reasonable procedure' to assure compliance with 15 USC § 1681(m)(a)

and (b) [sic], as *required* by the Fair Credit Reporting Act." Compl. ¶ 20. He also states that defendants "violated 15 USC § 1681m(a) and (b) of the FCRA because it had failed to maintain reasonable procedures to assure compliance with the provisions of subsection (a) and (b) of 15 USC § 1681m. [sic]" Plf.'s Mem.Opp'n Defs.' Mot. Dismiss at ¶ 2. Plaintiff's reliance on a reasonable procedure requirement for users of information as a basis for liability in this case is clearly erroneous.

## D. Willful Violation of Sections 1681i

As noted above, it is difficult to understand whether plaintiff intended to assert a claim of willful violation of section 1681i.[13] In count two of the Complaint, plaintiff does assert a claim of conspiracy to violate section 1681i of the Act. As part of these allegations, plaintiff states that defendants "failed to properly reinvestigate the False Wiggins Consumer Report." Compl. ¶ 24. Plaintiff also claims that defendants made employment decisions based upon a false credit report "intentionally used by defendants in violation [section 1681i] of the Fair Credit Reporting Act." *Id.* ¶ 29.

■ Assuming that plaintiff is asserting a willful violation of section 1681i in addition to the conspiracy claim, it is clear that defendants are under no duty to "reinvestigate" the facts provided in a consumer report.[14] Section 1681i establishes procedural requirements for reinvestigation by consumer reporting agencies in cases of disputed accuracy in a consumer's file. This section places no requirements whatsoever upon users of consumer reports. Defendants' motion to dismiss with respect to a section 1681i claim, if any, is granted.

## III. Breach of Employment Contract.

In count two, plaintiff alleges a breach of his employment contract. Plaintiff claims that defendants breached the employment contract by "its failure to comply with its covenant to retain [p]laintiff in its employ so long as his work was satisfactory." Compl. ¶ 30. Plaintiff claims substantial damages including lost wages and lost benefits "as well as incidental and consequential damages." *Id.* ¶ 31.

"It is well-settled in the District of Columbia that 'an employment contract, absent evidence to the contrary, is terminable at the will of either party.'" *Smith v. Union Labor Life Ins. Co.,* 620 A.2d 265, 268 (D.C.1993) (quoting *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C.1989) (citations omitted)); *see Newman v. Legal Servs. Corp.,* 628 F.Supp. 535, 538 (D.D.C.1986) ("An employment contract is terminable at will unless it is for a specified term."); *see also Adams v. George W. Cochran & Co., Inc.,* 597 A.2d 28 (D.C. 1991) (noting a very limited public policy exception to the at-will doctrine);[15] *Wemhoff v. Investors Management Corp. of America,* 528 A.2d 1205, 1208 n. 3 (D.C.1987). This presumption can be rebutted "only by a clear statement of the parties' intention to do so." *Frazier v. University of the District of Columbia,* 742 F.Supp. 28 (D.D.C.1990) (citing *Minihan v. American Pharmaceutical Ass'n,* 812 F.2d 726, 728 (D.C.Cir.1987)).

---

**13.** The text of this section states:

(a) If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of the information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such be verified, the consumer reporting agency shall promptly delete such information. The presence of contradictory information in the consumer's file does not in and of itself constitute reasonable grounds for believing the dispute is frivolous or irrelevant.

(b) If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.

(c) Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

15 U.S.C.A. § 1681i (1982).

**14.** Indeed, plaintiff concedes as much when later in the Complaint he claims that it was Equifax that had the duty to reinvestigate the underlying facts. *See* Compl. ¶ 42.

**15.** As one court noted: "*Adams* and *Gray* appear to demonstrate that when presented with the right circumstances, the District of Columbia Court of Appeals is willing to recognize public policy exceptions to the general rule." *MacNabb v. MacCartee,* 804 F.Supp. 378, 381 n. 4 (D.D.C. 1992). However, this case does not present the "right circumstances" warranting application of such an exception.

There is no allegation in the Complaint overcoming the at-will presumption regarding plaintiff's employment relationship with defendants. *See Fleming v. AT & T Info. Servs., Inc.,* 878 F.2d 1472, 1474 (D.C.Cir. 1989) (plaintiff's allegations held "manifestly insufficient" to overcome the at-will presumption); *Frazier v. University of the District of Columbia,* 742 F.Supp. 28, 29 (D.D.C.1990) ("Because plaintiff makes no allegation that his employment contract was for a definite period of time, he was an employee at-will, and, as such, could be discharged at any time."). Plaintiff never alleges that his employment contract with defendants existed for a definite period of time.

 Plaintiff's allegation that defendants promised to retain him "so long as his work was satisfactory," Compl. ¶ 30, does not rebut the presumption of at-will employment when there is no stated contract duration. As one court observed:

An intention to offer a specific term of employment may not be inferred from an employer's written or oral statement that the employee would not be terminated *so long as she performed her work in a satisfactory manner.* Unless an employee furnishes consideration in addition to her mere services, she is an employee at-will, whose employment may be terminated at any time for any reason.

*McWilliams v. AT & T Info. Systems, Inc.,* 728 F.Supp. 1186, 1195 (W.D.Pa.1990) (emphasis added) (citing *Betts v. Stroehmann Bros.,* 355 Pa.Super. 195, 512 A.2d 1280, 1281 (1986)). In the case at bar, plaintiff has not alleged any promise of employment for a specific term; therefore the court finds that Mr. Wiggins was an at-will employee and could be terminated by defendants at any time for any reason or for no reason at all. The District of Columbia does not recognize the tort of wrongful discharge for at-will employees. Defendants' motion to dismiss with regard to this claim is granted.

**16.** The FCRA expressly limits the potential liability of consumer reporting agencies by preempting state common-law privacy causes of action. Section 1681h(e) of the Act has been interpreted to provide a qualified immunity for consumer reporting agencies except as to false information furnished with malice or with willful intent to

**IV. Defamation.**

 In count three, plaintiff claims that defendants "made and published false and defamatory statements concerning [p]laintiff to third parties" "without business reason, privilege, justification or other excuse, in reckless disregard of the truth." [16] Compl. ¶ 42. This is the only allegation supporting a defamation claim within count three; however, various other statements located throughout this complaint also relate to a potential defamation claim. In paragraph 25 in count two, plaintiff states:

During the period January 19 through February 25, 1990, and at other times in 1990, 1991 and through the present time, TCI East/District Cablevision, by and through its agents and employees, slandered, libelled, and defamed Plaintiff by publishing and distributing the False Wiggins Consumer Report to third parties. TCI East/District Cablevision continued to maliciously claim that Plaintiff was tried and found guilty of a serious drug charge when they had actual knowledge that such claim was completely false.

Compl. ¶ 25. Later in this count, plaintiff states that "[b]etween January 12, 1990 and January 18, 1990, Williams[, an employee of defendants,] directly transmitted false, malicious information including accusations of felony conviction for cocaine possession pertaining to [p]laintiff to third parties, including the personnel offices of the Philip Morris, in Atlanta Georgia." *Id.* ¶ 35. In addition, plaintiff states that an employee of defendants "published to a third party, Evan Hendrick, an editor and publisher of the 'Privacy Times,' the contents of the two false and fraudulent termination forms which Williams had entered into [p]laintiff's personnel records between March 16, 1990 and March 22, 1990, with the intent and effect that such publication of the false information embarrass and humiliate plaintiff." *Id.* ¶ 36.

injure. *Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980).

As previously noted, however, defendants are merely users of the information contained within the consumer report in this case and do not receive the protection of this qualified immunity.

Plaintiff goes on to state that "[i]n January 1990, and at various times between January 12, 1990 and January 18, 1990 and other times, defendants, through agents of the DC Partnership and TCI East, Inc., discussed [p]laintiff's employment with officials at the Atlanta, Georgia offices of Philip Morris." *Id.* ¶ 38.[17] Within his claim for malicious and tortious interference with contract, plaintiff states:

> TCI East/District Cablevision, by and through its employees, agents, and attorneys intentionally, deliberately and willfully: 1) contacted another employer of Plaintiff, 2) orally related and published the Wiggins False consumer Report it received from ESI on January 10, 1990, and 3) repeated and restated the false cocaine conviction report after having actual knowledge that the report was totally incorrect.

*Id.* ¶ 47.

In a defamation case, the court must determine "whether the challenged statement is 'capable of bearing a particular meaning' and whether 'that meaning is defamatory.'" *Fleming v. AT & T Info. Servs.*, 878 F.2d 1472, 1475 (D.C.Cir.1989) (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 779 (D.C.Cir.1987) (en banc)); *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C.1990) (citations omitted). Once these questions are answered, the jury must decide "whether, in fact, those who heard the statement understood it to have such defamatory meaning as the court determined it could have." *Fleming*, 878 F.2d at 1475.

In setting a high standard for adjudging a statement slanderous, the D.C. Court of Appeals has stated that "an allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard University v. Best*, 484 A.2d 958, 989 (D.C.1984) (quoting *Johnson v. Johnson Publishing Co.*, 271 A.2d 696, 697 (D.C.1970)). A statement is considered to be defamatory "if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Moss*, 580 A.2d at 1023. The plaintiff must prove the defamatory nature of the publication; however, "to accuse one of a crime is libel per se." *Weaver v. Grafio*, 595 A.2d 983, 988 (D.C.1991) (citing *Johnson*, 271 A.2d at 698).

■ All averments of defamation must be plead with particularity. *See Hoffman v. Hill and Knowlton, Inc.*, 777 F.Supp. 1003, 1005 (D.D.C.1991) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir.1979)) ("[T]he use of *in hac verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings."); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1309 (1990) ("In libel and slander suits, the time and place of the publication should be specifically stated in the complaint."). Conclusory allegations are insufficient to state a claim. *See Hoffman*, 777 F.Supp. at 1005; *Ridgewells Caterers v. Nelson*, 688 F.Supp. 760, 763 (D.D.C.1988). A plaintiff should plead the time, place, content, speaker, and listener of the alleged defamatory matter. *Id.*

■ The content of the alleged defamatory matter is not in dispute. The consumer report stated that Mr. Wiggins had a felony cocaine conviction. This accusation of conviction of a crime is libelous per se. However, the allegations with respect to the other elements that must be plead with specificity are woefully deficient.

■ The defamation claim supported by the charges set forth in paragraph 42 of the Complaint must be dismissed for failure to state a claim upon which relief can be granted. Count three simply states that defendants made defamatory statements concern-

---

17. Plaintiff also asserts:

> Employees of TCI East/District Cablevision, including Director of Marketing Williams made direct contact with employees [p]laintiff's [sic] employer Phillip Morris [sic] and related to them that [p]laintiff had a felony cocaine conviction in the District of Columbia.

*Id.* ¶ 48. This assertion will be treated as duplicative of allegations set out in ¶ 38. To the extent that this allegation deals with other unspecified "employees" of defendants, it is insufficient to support a claim for defamation. It fails to state who made these statements and when they were made.

ing Mr. Wiggins to third parties. This allegation fails to state when or to whom these false and defamatory statements were made. Given the heightened pleading standard for defamation cases, plaintiff's conclusory allegations are insufficient to support this cause of action.

The same defect underlies Mr. Wiggins' claims in paragraph 25. Although he alleges a period of time during which defendants allegedly "slandered, libelled, and defamed" him by distributing the inaccurate consumer report, plaintiff fails to state to whom these statements were made.

Most of the claim in paragraph 25 can be dismissed for another reason. Plaintiff's defamation claim is barred by the District of Columbia's one-year statute of limitations. D.C.Code § 12–301(4).[18] Plaintiff alleges that between January 19, 1990 and February 25, 1990, defendants published the allegedly defamatory remarks. But this civil action was not filed until January 9, 1992, almost two years later. These claims are clearly outside the one-year bar.[19] The allegations stated in paragraphs 35, 36, 38, and 47 fail for the same reason.[20]

Given the heightened pleading standard in defamation actions and the applicable statute of limitations, defendants' motion to dismiss with respect to count three is granted.

## V. Tortious Interference with Contract.

In count four, plaintiff alleges that the defendants "maliciously and tortiously interfered with [p]laintiff's employment with Philip Morris by transmitting false information" pertaining to the plaintiff. Compl. ¶ 46. Plaintiff asserts that defendants contacted Philip Morris and relayed the false cocaine conviction information "after having actual knowledge that the report was totally incorrect." *Id.* ¶ 47. Mr. Wiggins' contract was "terminated and/or suspended by Philip Morris on February 6, 1990." *Id.* ¶ 39.[21]

 "Tortious interference with contractual relations arises when a defendant interferes with a contract between the plaintiff and some third party." *Weaver v. Gross,* 605 F.Supp. 210, 216 (D.D.C.1985) (citing *Donohoe v. Watt,* 546 F.Supp. 753, 757 (D.D.C. 1982), *aff'd,* 713 F.2d 864 (D.C.Cir.1983)). In order to recover for intentional interference with contractual relations, the plaintiff must prove four elements: "(1) existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach." *Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C.1989) (quoting *Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 288 (D.C.1977)); *see Connors, Fiscina, Swartz & Zimmerly v. Rees,* 599 A.2d 47, 51 n. 6 (D.C.1991).[22] Once these

---

**18.** The text of D.C.Code § 12–301(4) is as follows:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> * * * * * *
>
> (4) for libel, slander, assault, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year....

**19.** While plaintiff alleges unspecified defamatory remarks to unnamed persons on unstated dates in 1991, that claim lacks sufficient particularity to survive challenge as stated above.

**20.** Those allegations not barred by the statute of limitations are insufficient to support a defamation cause of action. For example, plaintiff states in paragraph 38: "In January 1990, and at various times between January 12, 1990 and January 18, 1990 and other times, ..." defendants defamed Mr. Wiggins. Although the Janu-

ary 1990 claims would be barred by the statute of limitations, the claim that defendants acted "at other times," does not meet the pleading requirements for defamation actions. Another example, so far as paragraph 35 relates to undisclosed "third parties," the allegations are dismissed for failure to state to whom the defamatory remarks were made and thus are insufficient to support a claim for defamation.

**21.** Plaintiff states that he "had had a written contract with Philip Morris for more than eleven years as a Retail Merchandiser which allowed termination of Plaintiff only for cause." Compl. ¶ 37.

**22.** Section 766 of the *Restatement (Second) of Torts* states:

> One who intentionally and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the con-

elements are shown, plaintiff may recover for intentional interference with contract "unless the defendant proves that his or her conduct was justified or privileged." *Id.* at 290.

■ There is no dispute that Mr. Wiggins had a contract with Philip Morris and that damages resulted from the breach of contract. If defendants contacted Philip Morris and relayed the false information after they had knowledge of its falsity, one could infer an attempt to intentionally and improperly procure the breach of the contract between Philip Morris and the plaintiff.

■ Defendants point out that plaintiff failed to specifically allege that defendant had knowledge of the contract. Although not specifically pled, plaintiffs are entitled to a favorable inference with respect to this element of the cause of action; if defendants contacted Philip Morris, they must have known of the contract.

Therefore, defendants' motion to dismiss with respect to count four is denied.

## VI. Conspiracy.

In count two, plaintiff charges defendants with two alleged conspiracies. Plaintiff claims that defendants worked with Equifax in a conspiracy to tortiously interfere with plaintiff's contract and to violate the FCRA. Plf.'s Mem. Opp'n Defs.' Mot. Dismiss at 4.

tract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766 (1979). The Restatement also sets out seven factors to be considered in determining whether interference with a contract is "improper":

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference, and
(g) the relations between the parties.

Plaintiff's allegations as to defendants' acts in furtherance of the alleged conspiracies are numerous.

■ It is well established that "there is no recognized independent tort action for civil conspiracy in the District of Columbia," *Waldon v. Covington,* 415 A.2d 1070, 1074 n. 14 (D.C.1980); however, District of Columbia law "acknowledges the concept of civil conspiracy." *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C.Cir.1983). "Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort." *Id.*

■ Under District of Columbia law, the elements of a claim for civil conspiracy are "an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act." *Okusami v. Psychiatric Institute of Washington, Inc.,* 959 F.2d 1062, 1066 (D.C.Cir.1992) (citing *Halberstam,* 705 F.2d at 487).[23] Moreover, "[t]o establish liability, the plaintiff also must prove that an unlawful overt act produced an injury and damages." *Id.* An agreement may be inferred from the underlying facts. *Id.*[24]

*Id.* § 767.

23. The exact language of *Halberstam* states the elements of a civil conspiracy as:
(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.
*Halberstam,* 705 F.2d at 477 (citation omitted).

24. "The element of agreement is a key distinguishing factor for a civil conspiracy action." *Halberstam,* 705 F.2d at 477. Proof of a tacit understanding is sufficient to show agreement. As one court has stated: "[I]n most cases the court will have to infer a conspiracy from indirect evidence, it must initially look to see if the alleged joint tortfeasors are pursuing the same goal-although performing different functions— and are in contact with one another. The circumstances of each case dictate what other specific evidence may be useful in inferring agreement." *Id.* at 481.

### A. Conspiracy to Violate the FCRA.

Plaintiff asserts that defendants, nonparty ESI, and "another of [p]laintiff's employers" deliberately and willfully conspired in failing to properly reinvestigate and correct the Wiggins consumer report as required by 15 U.S.C. § 1681i. Compl. ¶ 27; *see supra* note 13. Plaintiff suggests that these acts permanently damaged plaintiff's employment record and impaired plaintiff's future employment opportunities. Plaintiff claims that defendants' acts "caused plaintiff permanent and irreparable harm and damage, including without limitation, loss of back and front wages." Compl. ¶ 26–28.

Plaintiff has alleged facts that support at least an inference of an agreement to participate in a scheme to deliberately not correct the inaccurate consumer report, causing injury to Mr. Wiggins. However, as previously stated, Congress imposed different obligations upon the two classes of persons covered by the Act, consumer reporting agencies that provide consumer credit information and *users* of consumer reports. Allowing users of consumer reports to be weaved into the Act's consumer reporting agency punishment web via state conspiracy theories has the potential to circumvent the intent of Congress and the purpose of the Act.

However, a credit reporting agency and a user of consumer report information should not be allowed to actively engage in a conspiracy to violate the FCRA and shield themselves from liability simply because of a classification with regard to their use of the consumer information. It is plausible for a consumer reporting agency to scheme with a user of its financial information to further a conspiracy to violate one of the duties imposed upon the agency by the FCRA, and vice versa.

Consider the following hypothetical scenario for example. A consumer reporting agency receives a complaint from a temporary employee about a consumer report disseminated to his employer, a long-time and valued customer of the consumer reporting agency. The agency contacts the employer, the user of the information, to obtain additional information to further its efforts during its statutorily required reinvestigation. *See supra* note 13. Thereafter, the agency discovers that the report was based on erroneous information. The agency notifies the employer of this inaccuracy, but the employer communicates to the agency that it wants to terminate this troublesome employee. The employer then suggests that the agency might not want to correct this report, if the agency wants to continue doing business with this employer. Concerned about the lost profits from the threatened cancellation of employer's contract, the agency agrees not to correct the erroneous information. The employer can then "legitimately fire" the employee on the basis of this consumer report, assured that the erroneous report will not be corrected. Thus, the employer and agency have successfully agreed and conspired to violate one of the agencies' affirmative duties under the Act.

■■■ Congress explicitly refrained from eliminating any state-law rights relating to the dissemination or use of consumer information.[25] If evidence exists suggesting a conspiracy between a consumer reporting agency and a user of consumer information to violate one of the duties imposed under the Act, then either party can be held vicariously liable under a conspiracy theory of liability. Plaintiff has adequately alleged such a conspiracy in this case.

### B. Conspiracy to Tortiously Interfere with Employment Contract.

■■■ Plaintiff also alleges that defendants "conspired together to maliciously interfere with and violate plaintiff's rights to employment." Compl. ¶¶ 5(a), 32(a). There is an underlying tort under D.C. law for tortiously interfering with an employment

**25.** This finding is bolstered by § 1681t of the Act. It states:

This subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. 18 U.S.C.A. § 1681t (West 1982).

contract. Again, plaintiff has alleged facts that support at least an inference of an agreement to participate in a scheme to tortiously interfere with Mr. Wiggins' employment contract.

Defendants' motion to dismiss with respect to count two is denied.

## VII. Fraud.

Count five alleges a common-law fraud claim. Plaintiff maintains that defendants "knowingly, falsely and fraudulently marked [p]laintiff's employment records and two separate termination forms in March, 1990, to indicate that [p]laintiff had 'voluntarily quit' and that [p]laintiff did not return to reclaim his position." Compl. ¶ 53. Plaintiff contends that defendants engaged in "intentional tampering and inclusion of false and damaging information into [p]laintiff's employment files." *Id.*[26]

As provided in Fed.R.Civ.P. 9(b), an allegation of fraud must be stated with particularity. *See Auto World Inc. v. District of Columbia,* 627 A.2d 11, 16 (D.C.1993) (citing *Woodruff v. McConkey,* 524 A.2d 722, 728 (D.C.1987)); *Barlow v. McLeod,* 666 F.Supp. 222, 228 (D.D.C.1986). "In other words, a pleader 'must allege such facts as will reveal the existence of all the requisite elements of fraud.'" *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C.1984) (quoting *Bennett v. Kiggins,* 377 A.2d 57, 59–60 (D.C.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978)). This includes the "time, place and content of the false misrepresentations, the fact misrepresented, and what was obtained thereby." *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373 (D.C.Cir.1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982).

The essential elements of fraud under District of Columbia law are:

(1) a false representation,

(2) concerning a material fact,

(3) made with knowledge of its falsity,

(4) with the intent to deceive, and

(5) upon which reliance is placed.

*Auto World Inc.,* 627 A.2d at 16 (citing *Higgs,* 472 A.2d at 876); *Blake Construction Co. v. C.J. Coakley Co., Inc.,* 431 A.2d 569, 577 (D.C.1981).

Plaintiff failed to allege with particularity facts that would satisfy the requisite elements of an action for fraud.[27] No facts suggest that plaintiff relied to his detriment upon the alleged false entry in his employment file. To the contrary, the Complaint states that plaintiff disputed that entry. Compl. ¶ 13. Therefore, defendants' motion to dismiss with respect to count five is granted.

## VIII. Motion for Leave to Amend and Add Another Defendant.

The court clerk accepted plaintiff's first amended complaint. Plaintiff's first amended complaint failed to properly add A. Bruce Williams as a defendant.[28] This court grants

---

**26.** Plaintiff also states:

ESI, its employees, agents and attorneys transmitted the information to the following individuals and with intent to deceive: In June, 1991, to plaintiff's congresswoman Eleanor Holmes Norton; In June, 1991, to several members of the United States Congress; and on June 18, 1991, to Dan Rather's CBS Evening News/"Eye on America." Portions of the false statements were subsequently broadcast nationally on June 18, 1991, on a televised segment of CBS News "Eye on America."

*Id.* at ¶ 55. This Court fails to see how this supports a claim of fraud. This allegation also does not support the defamation cause of action against the defendants in this Complaint.

**27.** Often when a claim for fraud fails for lack of the requisite elements, courts will search to find evidence of a conspiracy to defraud. *See Higgs v. Higgs,* 472 A.2d 875 (D.C.1984). Civil liability for participation in a conspiracy to defraud is more likely to survive a Rule 12(b)(6) challenge for "[i]t is not necessary to aver facts against an alleged conspirator that satisfy all of the elements of fraud." *Higgs,* 472 A.2d at 877 (citations omitted). "Rather, a cause of action for civil conspiracy must allege the formation and operation of the conspiracy, wrongful acts done in furtherance of the common scheme, and damages suffered as a result." *Id.* (citations omitted). However, there is no evidence in the Complaint of a scheme to defraud of which the defendants could be a party.

**28.** Federal Rule of Civil Procedure 21 states:

Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.

defendant Williams' motion to dismiss the first amended complaint for failure to properly add him as a party defendant.

 Plaintiff seeks leave to file his second amended complaint and "add" ESI employee A. Bruce Williams as a defendant in this case. This proposed amendment to the complaint is governed by Federal Rule of Civil Procedure 15(a).[29] This rule requires leave of the court and states that "leave [to amend] shall be freely given when justice so requires." This decision to grant or deny leave to amend, however, is vested in the sound discretion of the trial court. Some of the more common reasons for denying leave to amend are that the amendment will result in "delay or undue prejudice to the opposing party, or if a party has had sufficient opportunity to state a claim and has failed to do so." *Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C.Cir. 1987) (citing *Doe v. McMillan*, 566 F.2d 713, 720 (D.C.Cir.1977), *cert. denied* 435 U.S. 969, 98 S.Ct. 1607, 56 L.Ed.2d 59 (1978) (citations omitted)).

 In the present case, there is no reason to allow plaintiff to amend his complaint. Plaintiff asserts only two new causes of action, false light and invasion of privacy. However, plaintiff has asserted no new material facts in support of these causes of action. The remainder of the proposed second amended complaint, filed over a year after the original filing of this lawsuit, is duplicative of the first amended complaint. In addition, plaintiff currently has five lawsuits pending before this court relating to substan-tially the same core set of facts.[30] The person plaintiff attempts to add in this case is already a defendant in one of the existing, related lawsuits.[31] The claims asserted by plaintiff in the second amended complaint are largely the same those raised in the related case. Adding Williams as a defendant in this case would only result in needless multiple defense of claims for Williams. Plaintiff has had ample opportunity to state his causes of action in multiple lawsuits. Plaintiff's motion for leave to amend and add A. Bruce Williams as a defendant in this case is denied.[32]

## IX. Conclusion.

For the foregoing reasons, defendants' motion to dismiss the First Amended Complaint with respect to count one is granted except as it relates to willful violations of section 1681m(a) of the Act. Defendants' motion to dismiss with respect to the conspiracy claims pled in count two is denied. Plaintiff's breach of employment contract claim in count two is dismissed. All of plaintiff's defamation claims are dismissed, and defendants' motion to dismiss the complaint with respect to count three is granted. Defendants' motion to dismiss with respect to counts four and five is granted. Defendants' motion to dismiss with respect to counts two and five is granted.

A separate order shall issue this date in accordance with this memorandum opinion.

Fed.R.Civ.P. 21. Upon filing his amended complaint, plaintiff failed to request leave to add A. Bruce Williams.

29. It is well established that "[a]fter a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21...." 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 21.05[1] (2d ed. 1989).

30. This case is related to a number of other cases now before this court: *Wiggins v. Equifax Services, Inc.*, C.A. No. 90–0199, *Wiggins v. William Hitchens*, C.A. No. 91–2179, *Wiggins v. Equifax, Inc.*, C.A. No. 92–0315, and *Wiggins v. Philip Morris, Inc.*, C.A. No. 92–0493. For extensive factual background information, see *Wiggins v. Equifax Services, Inc.*, C.A. No. 90–0199 (D.D.C. Oct. 21, 1993).

31. See *Wiggins v. William Hitchens*, C.A. No. 91–2179. Additionally, the time between the filing of this 1991 lawsuit involving Mr. Williams and plaintiff's attempt to add Williams as a party in this suit is over 17 months.

32. Moreover, in an August 1, 1990 letter, John LaPrade, counsel for plaintiffs, expressly and un-ambiguously covenanted not to sue Williams and other employees of District Cablevision in return for their cooperation. See *Wiggins v. Hitchens*, C.A. No. 91–2179, § VII (D.D.C.1994).

## ORDER

It is hereby ORDERED:

1. Defendants', District Cablevision, Inc., District Cablevision, TCI East, Inc., and TCI of D.C., Inc., motion to dismiss plaintiff's original complaint is DENIED as moot.

2. Plaintiff's motion to extend the time within which to file his first amended Complaint is GRANTED *nunc pro tunc.*

3. A. Bruce Williams' motion to dismiss plaintiff's First Amended Complaint is GRANTED for failure to properly add Williams as a party defendant. Williams is hereby DISMISSED as a party to this lawsuit in accordance with the accompanying memorandum opinion.

4. Plaintiff's motion for leave to file his second amended complaint and add A. Bruce Williams as a party to this case is DENIED.

5. Defendants' motion for a protective order is GRANTED *nunc pro tunc.*

6. Plaintiff's motion to extend time within which to respond to defendants' motions to dismiss is GRANTED *nunc pro tunc.*

7. Defendants' motion to dismiss the first amended complaint with respect to count one is GRANTED except as it relates to willful violations of section 1681m(a) of the Act in accordance with the accompanying memorandum opinion. Defendants' motion to dismiss with respect to the conspiracy claims pled in count two is DENIED. Plaintiff's breach of employment contract claim in count two is DISMISSED. All of plaintiff's defamation claims are DISMISSED, and defendant's motion to dismiss the complaint with respect to count three and five is GRANTED. Defendants' motion to dismiss with respect to counts four is DENIED.

SO ORDERED.