Pauline B. KLAHR, et al., Appellants,

v.

DISTRICT OF COLUMBIA, et al., Appellees.

No. 87–873.

District of Columbia Court of Appeals.

Argued Sept. 27, 1989.

Decided June 22, 1990.

Marc Fiedler, with whom Roger C. Johnson, Washington, D.C., was on the brief, for appellants.

Edward E. Schwab, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before NEWMAN, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Bonnie and Bruce Glover were robbed and murdered, allegedly by Donald Mosby, in the early morning hours of March 8, 1984. Appellants, the executors of the estates of the murdered couple, filed a wrongful death[1] and survival[2] action against the District of Columbia, three officials of the District government, and Donald Mosby. They alleged that the crimes were committed by Mosby after he had escaped from a halfway house operated by the District of Columbia Department of Corrections. Appellants maintained, and continue to maintain, that the District owed the Glovers an actionable duty of care to confine and supervise Mosby and prevent his escape. The trial court, however, dismissed the complaint against the District and its officials under Super.Ct.Civ.R. 12(b)(6) for failure to state a claim.[3]

Appellants contend on appeal that the trial court erred in concluding that the public duty doctrine barred their claim, arguing that the particular facts of this case justify an exception to the doctrine. Appellants also maintain that dismissal pursuant to Rule 12(b)(6) was not appropriate. We reject these arguments and affirm the dismissal.

I

On January 23, 1984, Donald Mosby was found guilty of possession of phenmetra-

1. D.C.Code § 16–2701 (1989).

2. D.C.Code § 12–101 (1989).

3. The court directed entry of a final judgment in favor of the District and its officials under Su-

per.Ct.Civ.R. 54(b), thereby making the dismissal immediately appealable. A default judgment was later entered against Mosby, who was served with process but failed to answer the complaint.

zine (Preludin), a controlled substance. For that offense, a misdemeanor,[4] he was sentenced to serve 120 days in a work-release program. Under the terms of his sentence, Mosby was confined to a halfway house operated by the Department of Corrections between the hours of 7:00 p.m. and 7:00 a.m. Regulations required Department officials to monitor his job performance and check on his presence every night.

On March 8, 1984, sometime between 1:45 a.m. and 6:00 a.m., Bruce Glover and his wife, Bonnie Glover, were robbed and murdered in their apartment. Two months later Donald Mosby was indicted for these crimes. At a pre-trial hearing in that case, a Superior Court judge granted a motion to suppress certain tangible evidence. The government appealed, but the suppression order was affirmed. *United States v. Mosby*, 495 A.2d 304 (D.C.1985). The indictment against Mosby was later dismissed for lack of sufficient admissible evidence on which to try him.

Appellants alleged in their complaint that Mosby was responsible for the robbery and murder of Mr. and Mrs. Glover, and that the crimes against the Glovers were a direct and proximate result of the District of Columbia's negligence. Specifically, they asserted (1) that the District breached its duty to confine Mosby between the hours of 7:00 p.m. and 7:00 a.m. on the night of the Glovers' murder; (2) that the District violated its own regulations by failing to verify Mosby's employment status (Mosby allegedly had not been working and had submitted fraudulent pay stubs to the officials supervising his work release); (3) that District employees violated Department of Corrections regulations relating to narcotics testing and surveillance, issuance of social passes, and the monitoring of residents after hours; and (4) that the District failed adequately to train, supervise, instruct, and control its employees responsible for monitoring Mosby's work-release program.

The District countered these charges by maintaining that the public duty doctrine precluded recovery of civil damages. It argued that the doctrine bars all suits against the District of Columbia when the alleged acts of negligence involve a breach of duty to the general public to ensure its safety, and that it had no specific duty to protect the Glovers, other than its duty to protect the general public of which they were a part.

## II

The issue in this case is whether the District of Columbia can be held liable for crimes committed by an escapee from a halfway house operated by the District government. Appellants contend that the Glovers were robbed and murdered as a result of the District's negligence. Specifically, they argue that these crimes occurred because Donald Mosby was not properly supervised and because he was not effectively confined on the night of the murders. We hold, however, that because the District owed the Glovers no duty greater than, or different from, that which it owed to the public at large, appellants' claim against the District is barred by what has come to be known as the public duty doctrine.

"The elements of a cause of action for negligence are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C.1984) (citations omitted). Under the public duty doctrine, a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public. *Akins v. District of Columbia*, 526 A.2d 933, 935 (D.C.), *cert. denied*, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987); *Morgan v. District of Columbia*, 468 A.2d 1306, 1310–1311 (D.C.1983) (en banc); *Platt v. District of Columbia*, 467 A.2d 149, 151 (D.C.1983); *Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C.1981) (en banc). When a claim is

4. *See* D.C.Code § 33–541(d) (1988).

made that the District negligently failed to protect someone from harm, the person advancing that claim must reckon at the outset with "the fundamental principle that a government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Id.* at 4 (citations omitted). In order to convert a general duty owed to the public into a special duty owed to an individual, a plaintiff must allege and prove two things: (1) a direct or continuing contact between the injured party and a governmental agency or official, and (2) a justifiable reliance on the part of the injured party. *Turner v. District of Columbia,* 532 A.2d 662, 667 (D.C.1987), citing *Platt, supra,* 467 A.2d at 151; *accord, Warren v. District of Columbia, supra,* 444 A.2d at 11. Appellants' complaint does not contain any such allegation, nor have they even attempted to show a special relationship between the District and the Glovers.

Appellants argue nevertheless that the custodial relationship between the District of Columbia and Mosby, and the non-discretionary nature of the District's resulting duty, necessarily established an actionable duty toward the public at large, and the Glovers in particular. We decline to carve out such an exception to the public duty doctrine. As this court recently stated, "[w]e have allowed an exception to this rule only where a specific undertaking to protect a particular individual has occurred, and that individual has justifiably relied upon such an undertaking." *Akins v. District of Columbia, supra,* 526 A.2d at 935.[5] Notwithstanding the great misfortune that befell the Glovers, it is evident that they were the victims of a random criminal attack. The District of Columbia had not agreed to provide specific protection for the Glovers, nor had it any reason to believe that Mosby posed a danger to the

Glovers any greater in degree than, or different in kind from, the danger he posed to anyone else. There is no legal basis for appellants' contention that government-supervised incarceration automatically creates a general duty of care to the public. Even if there were, appellants would still have to show that the District owed a special duty to the Glovers above and beyond that general duty.

In their attempt to modify the public duty doctrine, appellants urge us to follow the reasoning in *White v. United States,* 250 U.S.App.D.C. 435, 780 F.2d 97 (1986). In the first place, of course, that decision is not binding on us. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). But even if it were, *White* would not require us to reverse the dismissal of appellants' complaint. In *White,* Saint Elizabeths Hospital was held liable for its failure to supervise a patient who escaped and stabbed his wife. The court further held that the patient's criminal act was not a superseding legal cause exonerating the hospital from liability. The reasoning of the court, however, serves to distinguish *White* from the case at bar, even though the issues in the two cases appear to be somewhat similar.

The issue in *White* was whether the hospital owed a duty to the person injured by the escapee. In holding that such a duty existed, the court said, "It is well recognized that institutions, such as prisons and mental hospitals, that have custody over *dangerous persons* have a duty to members of the public to exercise reasonable care to control their inmates or patients." 250 U.S.App.D.C. at 441, 780 F.2d at 103 (emphasis added), citing RESTATEMENT (SECOND) OF TORTS § 319 (1965)[6]. The court also noted that because White had been committed to the hospital after being found not guilty of a serious crime by reason of insanity, he was presumed by law to be

---

5. A special relationship may also be created by a statute or regulation which describes a special duty owed to a particular class of individuals. *See, e.g., Turner v. District of Columbia, supra,* 532 A.2d at 667. No assertion is made here, however, that such a statute or regulation applies to this case.

6. Section 319 of the Restatement states:
   One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

dangerous for the duration of his commitment.[7] "Given this presumption of dangerousness," the court said, "we must focus solely on whether the Hospital breached its duty to confine White to the Hospital grounds." 250 U.S.App.D.C. at 442, 780 F.2d at 104.

Mosby, by contrast, had been convicted of only a misdemeanor, had been sentenced to a work-release program, and had not exhibited any propensity to commit violent crimes.[8] The trial court exercised its discretion to sentence him under the District of Columbia Work Release Act, which permits the court to sentence a misdemeanant to work release "whenever the judge of the sentencing court is satisfied that the ends of justice and the best interests of society as well as of such person would be subserved thereby...." D.C.Code § 24–461 (1989). This act is designed "to provide special privileges only for those prisoners who appear particularly trustworthy ... and to assist the prisoner in making an adjustment into society." *Gonzalez v. United States*, 498 A.2d 1172, 1177 (D.C. 1985). Because neither the crime of which Mosby was convicted nor the terms of his sentence gave rise to a presumption that he was dangerous, we need not consider whether this court should create an exception to the public duty doctrine when dangerous patients or inmates escape from confinement. Here the only duty involved "is a public duty, for neglect of which ... [an] officer is amenable to the public, and punishable by indictment only." *South v. Maryland*, 59 U.S. (18 How.) 396, 403, 15 L.Ed. 433 (1855), quoted in *Akins v. District of Columbia, supra,* 526 A.2d at 935. In other words, this is not a *White*-type case.

### III

Appellants also argue that dismissal for failure to state a claim was not appropriate. We disagree. Dismissal under Rule 12(b)(6) is warranted only when "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). For the purposes of a Rule 12(b)(6) motion, appellants' complaint must be construed in the light most favorable to their claim, and their allegations must be accepted as true. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C.1979). Nevertheless, because we are not willing to recognize a new exception to the public duty doctrine in this case, and because appellants have made no attempt to show, or even to allege, that the District of Columbia owed a special duty to the Glovers, the trial court was entirely correct in dismissing their complaint under Rule 12(b)(6). There is simply no way, under existing law, to read the complaint as stating any basis for holding the District liable for what happened to the Glovers. The public duty doctrine bars appellants' claim.

The order dismissing appellants' complaint is accordingly

*Affirmed.*

---

**7.** White had killed a police officer and had been found not guilty of murder by reason of insanity. He remained at Saint Elizabeths for more than ten years, during which time his violent behavior continued. He committed "numerous assaults on fellow patients and ward staff, an assault and robbery attempt against a cab driver while on unauthorized leave in 1971, and a second assault on several police officers in August 1978." 250 U.S.App.D.C. at 437, 780 F.2d at 99.

**8.** The Pretrial Services Agency report in Mosby's misdemeanor case stated that Mosby had no prior record of violent crimes. The report recommended that Mosby be released on bond pending trial, adding, "Based upon the information known to the Pretrial Services Agency, the Agency recommends no conditions in the safety category."