Richard G. WILLIAMS, Plaintiff,

v.

Margaret MOORE, et al., Defendants.

No. 95–0384.

United States District Court, District of Columbia.

Sept. 29, 1995.

Richard G. Williams, Pro Se.

David A. Flyer, Assistant Corporation Counsel, Correctional Litigation Section, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

■ Plaintiff, Richard G. Williams, has been incarcerated for twenty-one years and is within seven months of parole eligibility.[1] He has been denied admission to the District of Columbia Department of Corrections Work Training Furlough Program. Plaintiff argues that he is eligible for this program under the requirements set forth in Department of Corrections Order 4920.3C and that he has been given no reasons for the denial and no hearing or other opportunity to contest it. He brings this claim pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights under the Due Process Clause of the Fifth Amendment. Plaintiff is acting *pro se* and proceeding *in forma pauperis*.

Before the Court are Defendant District of Columbia's Motion to Dismiss and Plaintiff's Motion for Summary Judgment. After careful consideration of the pleadings in the light most favorable to the plaintiff, the Court concludes that the District of Columbia's laws and regulations create no liberty interest in placement in the work furlough program. Accordingly, defendants' motion must be granted and plaintiff's motion denied.

## I. STANDARD OF REVIEW

■ Plaintiff's complaint was filed *pro se.* Complaints filed without the assistance of counsel, however inartfully pleaded, are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). In considering a motion to dismiss such a complaint for failure to state a claim, plaintiff's factual allegations are presumed to be true and liberally construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Phillips v. Bu-*

*reau of Prisons,* 591 F.2d 966, 968 (D.C.Cir. 1979). Nevertheless, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Department of Navy,* 29 F.3d 682, 684 (D.C.Cir.1994) (citation omitted). Likewise, plaintiff's motion for summary judgment can be granted only if it is properly shown that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

## II. DISCUSSION

■ In order to determine whether a prisoner's procedural due process rights have been violated, the Court must first determine whether the prisoner has a liberty or property interest with which the State has interfered. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). A protected liberty interest may arise from either the Due Process Clause itself or from the laws of the States. *Id.* A prisoner's interest in a work program is not guaranteed directly by the Due Process Clause. *Toussaint v. McCarthy,* 801 F.2d 1080, 1106 (9th Cir.1986) (participation in prison work training program was a condition of confinement in which prisoner had no liberty interest); *see Kentucky Dep't of Corrections v. Thompson,* 490 U.S. at 460, 109 S.Ct. at 1908 ("[A]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Nor, as explained below, does the Court find that the Department of Corrections' regulations or District of Columbia law create a liberty or property interest in the work furlough program.

The Supreme Court's recent decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), has significantly altered the legal landscape with respect to

---

1. Plaintiff has legally changed his name to Abdul Shahid since the commencement of this action.

For the sake of consistency, this Opinion will refer to Mr. Williams by his birth name.

prisoners' liberty interests. Prior to *Sandin*, the Court would examine the language of prison guidelines or regulations to determine whether mandatory language that limited prison officials' discretion "created an enforceable expectation that the state would produce a particular outcome with respect to the prisoner's conditions of confinement." *Sandin v. Conner*, —— U.S. at ——, 115 S.Ct. at 2298 (citing *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). The *Sandin* Court rejected the *Hewitt* test because "it creates disincentives for States to codify prison management procedures in the interest of uniform treatment," and because the "approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." *Id.*

In lieu of the *Hewitt* test, the Court in *Sandin* directed courts to focus on the "nature of the deprivation" rather than "the language of particular regulation," —— U.S. at ——, 115 S.Ct. at 2299, and to return to the standards articulated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). *Sandin v. Conner*, —— U.S. at ——, 115 S.Ct. at 2300. In *Wolff*, the Supreme Court held that Nebraska law created a liberty interest in good time credits, 418 U.S. at 558, 94 S.Ct. at 2975–76, while in *Meachum* it held that, in the absence of any restrictions on prison officials' discretion, no liberty interest existed in a prisoner's expectation of staying in one prison rather than being transferred to another. 427 U.S. at 228, 96 S.Ct. at 2540. *See also Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973) (revocation of probation, like parole, results in a loss of liberty and thus entitles prisoners to due process proceedings).

Thus *Sandin* instructs that while state law still may create constitutionally cognizable liberty interests, courts should focus less on the language of specific regulations and more on the nature of the interest at stake. The Court offered several analytic touchstones to determine whether an expectation created by state law warrants protection as a full-

fledged liberty interest. For example, if the treatment complained of "falls within the expected parameters of the sentence imposed by a court of law," the Court suggests that the interest may be too insignificant to qualify as a liberty interest. *Sandin v. Conner*, —— U.S. at ——, 115 S.Ct. at 2301. Alternatively, if the treatment represents a "dramatic departure from the basic conditions of [the prisoner's] sentence," *id.* at ——, 115 S.Ct. at 2301, or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at ——, 115 S.Ct. at 2300, the prisoner's liberty interests are implicated.

The Supreme Court in *Sandin* did not explicitly address how release programs such as work furloughs should fare under its new methodology. On the one hand, work release in the District of Columbia is a species of incarceration, and prison officials and courts have wide discretion to grant or deny participation in such programs. *See Klahr v. District of Columbia*, 576 A.2d 718, 721 (D.C. 1990) (District of Columbia Work Release Act provides "special privileges" to inmates and gives discretion to sentencing judges); *Gonzalez v. United States*, 498 A.2d 1172, 1174–75 (D.C.1985) ("Congress clearly viewed halfway houses, in which work release prisoners would reside, as places of incarceration.").

On the other hand, work release, like the good time credits protected in *Wolff*, provides substantial benefits such as expanded freedom, earning capacity, training and preparation for community reentry that relate not only to the terms of confinement itself but to life outside the prison. *Sandin*, by contrast, focused on the day-to-day characteristics of life inside the prison. Since the Court in *Sandin* explicitly instructs courts to examine the nature of the deprivation rather than the language of the regulation, it could be argued that work release, unlike administrative confinement, represents a liberty interest of "real substance" that creates a cognizable claim under the Due Process Clause. *Sandin v. Conner*, —— U.S. at ——, 115 S.Ct. at 2297 (citing *Wolff v. McDonnell*, 418 U.S. at 557, 94 S.Ct. at 2975); *see also Sandin v. Conner*, —— U.S. at ——, 115 S.Ct. at 2306

(Breyer, J., dissenting) (noting that the generality of the majority's standard might be read to extend protection to atypical hardships not covered by preexisting law).[2]

This Circuit has not yet determined whether *Sandin's* prescriptions regarding judicial treatment of the "ordinary incidents of prison life" include regulations affecting confinement options such as work furlough programs and halfway houses. While several judges in this Circuit have concluded that certain prison policies do not create liberty interests under *Sandin*, none has addressed work furlough training or comparable programs. *See Scales v. District of Columbia,* 894 F.Supp. 14, 17 (D.D.C.1995) (Sporkin, J.) (under *Sandin,* prison regulations do not create a liberty interest in remaining free from administrative segregation); *Crosby–Bey v. Barry,* Civil Action No. 95–0054 (D.D.C. July 12, 1995) (Joyce Hens Green, J.) ("[Prisoner's] claims that he never received a classification evaluation/study and has not been placed in the least restrictive environment are precisely the type that do not create a liberty interest in light of *Sandin.*"); *Pryor–El v. Kelly,* 892 F.Supp. 261 (D.D.C.1995) (Richey, J.) (*Sandin* precludes finding a liberty interest in the shipping of prisoner's property to his home, and pre-*Sandin* law does not create a liberty interest in participation in a drug treatment program).

This Court need not reach the issue of whether *Sandin's* approach to the "ordinary incidents of prison life" encompasses work furlough programs because it finds that under pre-*Sandin* law Department of Corrections Order 4920.3C does not contain the kind of explicit mandatory language limiting official discretion that would give rise to a protected interest in the work furlough program. *See, e.g., Ostrer v. U.S. Bureau of Prisons,* 1989 WL 128033, *128033 (D.C.Cir., September 6, 1989) (finding no liberty interest created by prison regulations governing halfway house placement); *Williams v. Braxton,* 1991 WL 132523, *2, 1991 U.S. Dist. LEXIS 9724, *5 (D.D.C. July 12, 1991) (Lamberth, J.) (finding no federal substan-

tive right to work release); *Klahr v. District of Columbia,* 576 A.2d at 721 (work release participation is discretionary with the sentencing judge).

While the Department of Corrections' Order does contain rigorous eligibility criteria, it lacks mandatory language requiring officials to admit prisoners to the furlough program even when they have met those criteria. *See* D.C.Code § 24–461 (creating a work release program under which certain individuals *"may* ... be granted the *privilege* of a work release") (emphasis added); Department of Corrections Order 4920.3C (eligibility criteria exclude individuals convicted of violent crimes or those identified with large-scale criminal activities). The mere fact that admittance to a work training program confers a benefit does not create a protected liberty interest where the governing statutory or regulatory language does not limit prison officials' discretion to confer that benefit. *Meachum v. Fano,* 427 U.S. at 224, 226, 96 S.Ct. at 2538, 2539.

The Court concludes that the District of Columbia and the Department of Corrections have not created a liberty interest in the work furlough program. Since plaintiff has failed to state a claim as a matter of law, it follows that plaintiff is not entitled to summary judgment. Accordingly, it is hereby

ORDERED that defendants' motion to dismiss is GRANTED; it is

FURTHER ORDERED that plaintiff's motion for summary judgment is DENIED; it is

FURTHER ORDERED that this case is DISMISSED with prejudice; and it is

FURTHER ORDERED that this case shall be removed from the docket of this Court.

SO ORDERED.

---

**2.** The Court in *Sandin* did cite *Klos v. Haskell,* 48 F.3d 81 (2d Cir.1995), in which a prisoner claimed a liberty interest in the right to participate in boot camp, as an example of the sort of disfavored prisoner claim previously encouraged by *Hewitt. Sandin v. Conner,* —— U.S. at —— ——, 115 S.Ct. at 2299–2300.