*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0445

LAUREN D. BOUTAUGH, *et al.*, APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CAB-006003)

(Hon. Yvonne Williams, Motions Judge)

(Argued January 14, 2025　　　　　　　　　　Decided May 22, 2025)

*Matthew J. Focht*, with whom *Patrick G. Senftle* and *Marc L. Wilhite* were on the brief, for appellants.

*Holly M. Johnson*, Senior Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Thais-Lyn Trayer*, Deputy Solicitor General, were on the brief, for appellee.

Before EASTERLY, HOWARD, and SHANKER, *Associate Judges*.

PER CURIAM: Lauren and Joshua Boutaugh, a married couple, were both sworn officers of the Metropolitan Police Department (MPD) in December 2020 when Ms. Boutaugh, who was approximately thirty-two weeks pregnant, contracted COVID-19. Shortly thereafter, the couple's baby, SMB, was delivered stillborn. An

autopsy determined that SMB's death was caused by her exposure to the virus. The Boutaughs sued the District of Columbia for negligence and wrongful death, alleging that MPD had failed to protect Ms. Boutaugh, and thus SMB, from contracting COVID-19. The Superior Court dismissed the action under Super. Ct. Civ. R. 12(b)(6) on the grounds that the Boutaughs' claims were barred by the public duty doctrine. We review the dismissal of the Boutaughs' complaint de novo, "accept[ing] the allegations of the complaint as true[] and constru[ing] all facts and inferences in favor of the plaintiff[s]." *District of Columbia v. Amazon.com, Inc.*, 320 A.3d 1073, 1079 (D.C. 2024) (quoting *Grayson v. AT&T Corp.*, 15 A.3d 219, 228 (D.C. 2011) (en banc)). The District now concedes that the Boutaughs' complaint plausibly pled that a special relationship existed between SMB and the District through Ms. Boutaugh's employment with MPD, thus establishing an exception to the public duty doctrine. The District nonetheless defends the dismissal of the complaint on the ground that the Boutaughs failed to plead any causal link between the District's breach of its duty to Ms. Boutaugh and SMB's death. For the reasons set forth below, we reverse.

## I.     Factual and Procedural Background

The Boutaughs allege the following facts in their complaint and thus, for the purposes of our review, we accept them as true. In June 2020, the Boutaughs—both

police officers assigned to MPD's Fifth District—learned that Ms. Boutaugh was pregnant with their second child. At the time, MPD had in place certain policies aimed at protecting the health and safety of its employees during the COVID-19 pandemic, including a mandatory telework policy for civilian administrative staff (but not for sworn officers) at the Fifth District headquarters. Ms. Boutaugh notified MPD of her pregnancy and was placed on a limited duty status, but she was still required to report to work in-person at MPD's Fifth District headquarters. In an effort to avoid COVID-19 infection, Ms. Boutaugh "curtailed all outside activity, remained masked at all times outside the home, including in the office, and limited her contacts to work and home only." Throughout Ms. Boutaugh's pregnancy, however, MPD "repeatedly failed to comply with" its own policies "concerning mask-wearing, contact tracing, social distancing, health assessments and/or temperature checks, self-quarantining, and limitations on access" to the Fifth District headquarters.

On or around December 16, 2020, two officers in Mr. Boutaugh's unit tested positive for COVID-19. Although Mr. Boutaugh had been in close contact with these officers, MPD's contact tracing program failed to advise him of his exposure. On December 18, Ms. Boutaugh went to work at the Fifth District for the last time before falling ill. By December 19, Mr. Boutaugh had developed COVID-19 symptoms. On December 20, Ms. Boutaugh began experiencing symptoms, and

Mr. Boutaugh tested positive for the virus. Over the following week, Ms. Boutaugh became seriously ill with COVID-19.

On December 31, 2020, at thirty-three weeks pregnant, Ms. Boutaugh delivered the couple's baby, SMB, stillborn. A fetal autopsy concluded that SMB's cause of death was "vascular malperfusion of the placenta due to maternal COVID-19 infection with coagulopathy." The fetus also appeared to itself be infected with COVID-19, "more likely than not from transplacental transmission."

The Boutaughs filed suit against the District, alleging negligence and wrongful death on behalf of themselves and SMB. Their complaint asserted that, "[h]ad the District of Columbia taken appropriate actions to protect pregnant sworn [MPD] officers, such as [Ms. Boutaugh], from COVID-19 exposure, including, but not limited to, permitting pregnant sworn officers to work from home . . . and effectively implementing and enforcing the District's own mask mandate, contact tracing, health surveillance, quarantine, and/or infection control procedures, SMB would today be a healthy toddler." The District filed a motion to dismiss under Super. Ct. Civ. R. 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that the Boutaughs' claims were barred by the public duty doctrine, "under which 'the government and its agents are under no general duty to provide public services . . . to any particular individual citizen.'" *Hoodbhoy v. District of*

*Columbia*, 282 A.3d 1092, 1097 (D.C. 2022) (quoting *Klahr v. District of Columbia*, 576 A.2d 718, 719-20 (D.C. 1990)).

The Boutaughs opposed the motion, arguing that the public duty doctrine did not apply because, unlike other cases relied upon by the District, theirs did not involve "the happening of an unexpected event and the failure of the District to provide adequate rescue services to the plaintiff." Instead, the Boutaughs argued, "[h]aving put in place a policy requiring MPD sworn officers to remain at their MPD worksites," the District had a duty "to put in place and execute adequate safety procedures, including contact tracing, to prevent COVID-19 exposure." Even if the public duty doctrine did apply, the Boutaughs further argued, an exception applied because "a special relationship existed between SMB and the District of Columbia" under the District's Protecting Pregnant Workers Fairness Act (PPWFA), D.C. Code § 32-1231.01, and/or the telework policy issued by the District in response to the pandemic, which "was specifically tailored to MPD sworn officers."

The Superior Court concluded that (1) the public duty doctrine applied because "SMB contracting COVID-19 through Ms. Boutaugh was the result of an external threat," rather than the result of "direct action" by the District, and (2) there was no special relationship between the District and SMB. The court thus concluded that the public duty doctrine barred the Boutaughs' suit and so dismissed the

complaint for failure to state a claim for negligence or wrongful death. This appeal followed.

## II. Discussion

In their opening brief on appeal, the Boutaughs renew many of the same arguments they made in their opposition to the District's motion to dismiss. The District, on the other hand, has changed tack, conceding that "the complaint plausibly alleges a special relationship with SMB through Ms. Boutaugh's employment with MPD" but arguing that "any special duty" arising out of this relationship was "simply irrelevant to SMB's claim" because the Boutaughs could not prove proximate causation.

We consider first the implications of the District's concession that a special relationship plausibly existed, before turning to the District's argument that the complaint nonetheless fails on proximate causation grounds.

### A. Public Duty Doctrine

In order to establish a claim for negligence or wrongful death, "the plaintiff must show: '(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach.'" *Hoodbhoy*, 282 A.3d at 1096 (quoting *Hedgepeth v. Whitman Walker Clinic*, 22

A.3d 789, 793 (D.C. 2011)). "When the District or its agents take action that 'directly' harms an individual, the law of negligence applies to it as it would to any other tortfeasor." *Id.* (quoting *District of Columbia v. Evans*, 644 A.2d 1008, 1017 n.8 (D.C. 1994)). By contrast,

> when a plaintiff alleges the "District negligently failed to protect [them] from harm," the first element of a negligence claim—duty—is governed by the public duty doctrine, under which the "government and its agents are under no general duty to provide public services . . . to any particular individual citizen."

*Id.* at 1097 (first alteration in original) (quoting *Klahr*, 576 A.2d at 719-20). To plausibly state a claim for negligence or wrongful death when the public duty doctrine applies, a plaintiff "must allege . . . that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Id.* (quoting *Klahr*, 576 A.2d at 719).

### 1. The Public Duty Doctrine Applies

The Boutaughs argue that the public duty doctrine does not apply here because the case hinges not on the existence of COVID-19—an external threat—but on the "execution of the District['s] *response* to the pandemic," which "was a direct action entirely within the District's control." The Boutaughs argue that the Superior Court "incorrectly conflate[d] the line of cases alleging a failure to act in an emergency situation, where application of the public duty doctrine is warranted, with cases . . .

where the District of Columbia owes an independent tort duty to the plaintiff." This case, the Boutaughs argue, falls into the latter category.

The Boutaughs' argument is hard to square with this court's public duty doctrine case law, which has consistently applied the doctrine to situations arising out of the District's *response* to an emergency or external threat. *See, e.g.*, *Allen v. District of Columbia*, 100 A.3d 63, 65, 69-70 (D.C. 2014)[1] (applying the doctrine to wrongful death suit against the District for failure to provide adequate emergency services to firefighter candidate who fell ill during the Fire and Emergency Medical Services Department physical ability test); *Wanzer v. District of Columbia*, 580 A.2d 127, 129-31 (D.C. 1990) (doctrine applied to wrongful death claim when District's Emergency Medical Services failed to dispatch ambulance in response to emergency call); *Morgan v. District of Columbia*, 468 A.2d 1306, 1308-12, 1316 (D.C. 1983) (en banc) (doctrine applied to negligence and wrongful death claims against MPD for failure to protect wife of police officer after she reported abuse and police captain failed to follow MPD policy by conducting official investigation).

---

[1] This court vacated the decision in *Allen* and granted rehearing en banc, *Allen v. District of Columbia*, 2015 WL 5725532 (D.C. 2015) (order), but the Council for the District of Columbia then "ratifie[d] the interpretation and application of the public duty doctrine by the District of Columbia Court of Appeals up through" the *Allen* panel decision and extended the doctrine to District contractors and their employees, Fiscal Year 2017 Budget Support Act of 2016, D.C. Law 21-160, § 3072(b), 63 D.C. Reg. 10775 (2016); *see also* D.C. Code § 5-401.02.

Most recently, in *Hoodbhoy*, we confronted a wrongful death suit brought by the widow of a man who was shot and killed by his neighbor, Hilman Jordan. 282 A.3d. at 1094-95. Mr. Jordan had been acquitted by reason of insanity twenty years earlier on a first-degree murder charge and was on conditional release from a psychiatric hospital when he shot Ms. Hoodbhoy's husband. *Id.* at 1094. Ms. Hoodbhoy alleged, among other claims, that the D.C. Department of Behavioral Health had negligently failed to comply with several of the court-ordered conditions of Mr. Jordan's release. *Id.* at 1095. We concluded that even a "mandatory duty," imposed on the District by court order, fell within the limits of the public duty doctrine, and thus we held that the plaintiff's claims were barred. *Id.* at 1101.

We are not persuaded that the District's efforts to protect MPD officers from the COVID-19 pandemic constitute any more of "a direct action entirely within the District's control" than did the emergency responses or mandatory duties at issue in *Hoodbhoy* and our other public duty doctrine cases. To be sure, the doctrine is not without its limits; we have not, for example, applied the doctrine "to claims of negligence that arise from various duties other than the duty to protect." *Hoodbhoy*, 282 A.3d at 1102 (Easterly, J., concurring). But the Boutaughs' case is quintessentially a claim about the District's duty to protect—in this case, to protect SMB by protecting her mother from the COVID-19 pandemic—and thus falls squarely within the bounds of the doctrine under existing law.

### 2. The District Concedes that a Special Relationship Exists

Even when the public duty doctrine applies, a plaintiff can still bring a claim for negligence or wrongful death upon a showing that the District owed a "special duty" to, or had a "special relationship" with, the injured party. *Hoodbhoy*, 282 A.3d at 1097. This court has recognized "at least two ways to demonstrate the existence of a 'special relationship.'" *Id.* (quoting *Turner v. District of Columbia*, 532 A.2d 662, 667 (D.C. 1987)). "First, a special relationship can be established by (1) a direct . . . or continuing contact between the victim and the governmental agency or official . . . different from the type of contact that the District has with the general public" and "(2) a justifiable reliance on the part of the victim." *Id.* (first alteration in original) (internal citations and quotation marks omitted). "Second, a special relationship can be established . . . via a statute or regulation that 'describe[s] a special duty to a particular class of individuals.'" *Id.* (second alteration in original) (quoting *Turner*, 532 A.2d at 667).

In their opening brief, the Boutaughs argue that SMB, through her mother, had a special relationship with the District under both of these theories. First, the Boutaughs argue that SMB had a special relationship with the District based on "direct and continuing contact." More specifically, they argue that the absence of a telework option for pregnant MPD officers during the pandemic "compelled"

Ms. Boutaugh's "ongoing . . . presence at" the Fifth District headquarters for the duration of her pregnancy, and Ms. Boutaugh relied on the District's representations that it would "effectively institute and execute" its own COVID-19 policies. Second, the Boutaughs argue that SMB had a relationship with the District by virtue of "[s]tatutory and [r]egulatory [a]uthority," namely, the PPWFA, which requires employers to provide reasonable accommodations for pregnant and nursing employees, *see* D.C. Code §§ 32-1231.01 to -1231.15, and the MPD executive order that laid out the agency's telework policy in response to the pandemic (and indicated that sworn officers would continue to report to work), Metro. Police Dep't Exec. Order EO-20-010, Coronavirus 2019 Emergency Telework (March 13, 2020).

Although the District denied the existence of any special relationship before the Superior Court, it now "concedes . . . that the complaint plausibly alleges a special relationship with SMB through Ms. Boutaugh's employment with MPD" based on the theory of "direct or continuing contact" and "justifiable reliance." We thus need not decide whether a special relationship might be created by either the PPWFA or MPD's telework order; we assume any duty created by Ms. Boutaugh's status as an employee *generally* would be at least as broad—if not broader—than any potential duty created by either of those policies, which both govern narrower issues than the employer-employee relationship writ large.

Therefore, in light of the District's concession, we conclude that the Boutaughs' claims are not barred by the public duty doctrine to the extent that they allege a breach of the special duty the District owed to SMB through Ms. Boutaugh's employment.

## B.    Causation

On appeal, the District argues for the first time that even if it owed a special duty to SMB, such a duty "is simply irrelevant" to the Boutaughs' claims in the absence of "proof that the [District's] negligence was the cause-in-fact of [SMB's] injury." The District goes on to argue that the complaint "makes it impossible for a factfinder to conclude without speculating that Ms. Boutaugh contracted COVID from the workplace" because it "alleg[es] that Ms. Boutaugh contracted COVID from Mr. Boutaugh *in their home*." The District cites to language from the Superior Court's order dismissing the case in which the court found that the Boutaughs' complaint "allege[s] that two MPD officers spread COVID-19 to Mr. Boutaugh, who then spread it Ms. Boutaugh because MPD did not conduct adequate and timely contact tracing" and thus that the complaint effectively concedes that "the harm to SMB has no relationship to Ms. Boutaugh's status as an MPD employee." The District further argues that the Boutaughs, on appeal, "have no response to this"; "do not argue that it is more likely than not that Ms. Boutaugh contracted COVID from

the workplace, or that discovery could possibly lead to nonspeculative evidence supporting such a conclusion"; and "make no effort to link Ms. Boutaugh's illness to the District's alleged special duty to enforce COVID-prevention measures in the workplace."

As an initial matter, we are not persuaded that questions relating to causation were ruled on by the Superior Court. The District did not raise any causation arguments in its motion to dismiss. And although the above-quoted language from the Superior Court's order gestures at causation, the court made these statements within the specific context of considering and rejecting the Boutaughs' argument that the PPWFA created a special relationship. The court's ultimate ruling on the District's motion to dismiss stated unambiguously that the complaint failed to state a claim "because the public duty doctrine bars [the Boutaughs] from establishing that the District owed a duty"—not because the complaint failed to allege a plausible theory of causation. We thus are unpersuaded by the District's suggestion that the Boutaughs somehow forfeited any argument on appeal that the complaint sufficiently pled causation by not raising it in their opening brief. The Boutaughs focused on the application of the public duty doctrine, not their theories of causation, because that was the basis of the Superior Court's ruling that they are challenging

on appeal.[2]

It is the District, not the Boutaughs, who are in a procedurally precarious position by seeking to raise a new argument for the first time on appeal. This court generally does not consider such arguments. *See Johnson v. United States*, 302 A.3d 499, 500 (D.C. 2023) (noting that this is "a court of review, not of first view" (quoting *Laniyan v. United States*, 226 A.3d 1146, 1153 (D.C. 2020))). But even assuming the District's causation argument was preserved before the Superior Court, we do not agree that the Boutaughs' complaint failed to plausibly allege a theory of causation based on the District's breach of its duty to Ms. Boutaugh in her own workplace. Thus, to the extent the Superior Court drew such a conclusion, it did so in error.

The bulk of the Boutaughs' complaint is focused on MPD's alleged failure to implement policies directly impacting Ms. Boutaugh and her risk of exposure to COVID-19 in the workplace. It alleges, for example, that: "no work accommodation of any kind was provided to MPD sworn pregnant officers, including [Ms. Boutaugh], despite the obvious risk of increased harm to themselves, their pregnancies, and their babies, from COVID-19"; Ms. Boutaugh was "required to

---

[2] The Boutaughs respond to the District's causation argument in their reply brief.

appear for work in-person at Fifth District Headquarters, where policies and procedures put in place during the pandemic to prevent COVID-19 infection were being routinely broken and/or ignored"; "the Fifth District repeatedly failed to comply with [MPD] General Orders concerning mask-wearing, contact tracing, social distancing, health assessments, and/or temperature checks, self-quarantining, and limitations on access to the [Fifth District] administrative offices, thereby putting pregnant sworn officers working in the administrative office, such as Ms. Boutaugh, at undue risk of COVID-19 infection"; "health screening questions were being performed by unqualified personnel" and were "being performed after members had already entered the Fifth District building"; "access to the administrative office . . . where Ms. Boutaugh worked was not being appropriately limited[,] . . . further aggravat[ing] the risk of COVID exposure for pregnant members such as Ms. Boutaugh"; and "safety shields for the workers in Ms. Boutaugh's office were promised by [MPD], but never delivered." In addition to all of these factual allegations that supported a claim of workplace exposure to COVID-19, the Boutaughs asserted in their complaint that "Ms. Boutaugh is entitled to the benefit of a rebuttable presumption *that she contracted COVID-19 from the workplace*." (emphasis added).

In contrast to the three pages the Boutaughs' complaint devotes to its allegations of the policy failures that directly increased Ms. Boutaugh's risk of

exposure while she was at work, it dedicates less than a page to discussing MPD's failure to conduct adequate contact tracing and Mr. Boutaugh's subsequent infection. Nowhere does the complaint state unequivocally that Mr. Boutaugh spread the virus to Ms. Boutaugh because he was not timely notified by MPD of his exposure. Rather, it states that Ms. Boutaugh fell ill with COVID-19 on December 20, 2020—one day after Mr. Boutaugh first began experiencing symptoms, and two days after Ms. Boutaugh herself last reported to a workplace allegedly rife with exposure risks. "[C]onstru[ing] all facts and inferences in favor of the plaintiff[s]," *Amazon.com, Inc.*, 320 A.3d at 1079 (quoting *Grayson*, 15 A.3d at 228), it seems clear enough that the complaint alleges two alternative theories of causation: that Ms. Boutaugh was infected at work or she was infected by Mr. Boutaugh.

The District argues that the complaint "makes it impossible for a factfinder to conclude without speculating that Ms. Boutaugh contracted COVID from the workplace." But the District levels this critique without acknowledging all of the facts the complaint pled about Ms. Boutaugh's workplace exposure. To the extent that the District seeks more conclusive proof of causation, such proof is not required at the pleading stage; "[i]ndeed it may appear on the face of the pleadings that recovery is very remote and unlikely." *In re Estate of Curseen*, 890 A.2d 191, 194 (D.C. 2006) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Nor must the Boutaughs plead only one possible theory of causation. *See* Super. Ct. Civ.

R. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any of them is sufficient."); *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) (explaining that "a complaint may contain alternative theories, and if one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint"). Whether a factfinder could ultimately conclude that Ms. Boutaugh more likely than not contracted COVID-19 at work—rather than from her husband or any other source—is a question that remains to be litigated, presumably with the benefit of scientific evidence and expert testimony. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014) (explaining that "[i]n the absence of a developed factual record, or undisputed matters which can be judicially noticed, a district court is not equipped to make plausibility determinations on complex scientific issues" at the motion to dismiss stage).

Thus, because we conclude that the complaint plausibly alleges that MPD breached its duty to SMB by failing to protect Ms. Boutaugh from exposure to COVID-19 in her workplace, and that this breach proximately caused SMB's injury, we reject the District's argument that the Boutaughs' complaint should be dismissed for failure to state a claim on proximate causation grounds.

We do, however, agree with the District that any claim premised on Ms. Boutaugh contracting COVID-19 from Mr. Boutaugh in their home cannot pass

muster at this stage. Nowhere in their complaint, their opposition to the District's motion to dismiss, or their brief to this court have the Boutaughs alleged that the District had a special relationship with SMB through Mr. Boutaugh. And any special duty the District owed to Ms. Boutaugh was in the context of her employment with MPD, not in her position as Mr. Boutaugh's wife. *See Allen*, 100 A.3d at 72-73 (rejecting the proposition that the special relationship exception to the public duty doctrine runs beyond the particular context in which the special relationship at issue is created). Thus, the Boutaughs cannot plausibly claim that the District breached its duty to Ms. Boutaugh by failing to adequately deploy its contact-tracing program to notify Mr. Boutaugh of his COVID-19 exposure.

\*          \*          \*

For the foregoing reasons, we reverse the Superior Court's order dismissing the Boutaughs' complaint and remand for further proceedings consistent with this opinion.

*So ordered.*

EASTERLY, *Associate Judge*, concurring: When this court was last faced with the task of interpreting the public duty doctrine in *Hoodbhoy v. District of Columbia*, 282 A.3d 1092 (D.C. 2022), I explained in a concurrence that "[a]lthough I

acknowledge this court is bound by our public duty doctrine, I continue to view it as 'analytically bankrupt.'" *Id.* at 1102 (Easterly, J., concurring). In the present case, the division applies the doctrine in accordance with the law, but my views on the doctrine, particularly as codified by the Council of the District of Columbia, *see supra* note 1, remain unchanged.